In the Matter of NORTHEAST SOLITE CORPORATION et al., Appellants, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, Respondent.

Third Department, January 6, 1983

**APPEARANCES OF COUNSEL**

*McGuire, Woods & Battle* and *DeGraff, Foy, Conway, Holt-Harris & Mealey* (*Thomas S. West* of counsel), for appellants.

*Robert Abrams, Attorney-General* (*Reuben Goldwaser, Peter H. Schiff* and *James A. Sevinsky* of counsel), for respondent.

**OPINION OF THE COURT**

CASEY, J. P.

Petitioner Northeast Solite Corporation (petitioner) produces lightweight aggregate, a building material, at its processing facility in Ulster County. The production process involves on-site mining, crushing and heating of raw

shale. The shale is heated in rotary kilns fired primarily with mixed industrial solvents and spent lubricating oils which petitioner has used as fuels since prior to April, 1976. Petitioner's facility includes an area for receiving, blending and storing the fuels, and an area for the storage of industrial wastes and heavy metals generated by the production process.

The Department of Environmental Conservation has issued numerous permits to petitioner for its production facility, including permits covering mining and air quality and State pollution discharge elimination system (SPDES) permits. Departmental regulations governing solid waste management facilities (6 NYCRR Part 360) were amended in 1977 and thereafter to apply to industrial facilities whose manufacturing processes involved the storage and burning of "nonconforming fuels" and the generation and accumulation of industrial and hazardous wastes. It is unclear when these regulations first applied to petitioner's facility, but petitioner now concedes that it is required to obtain Part 360 permits to continue its operation.

In May, 1981, the department commenced administrative enforcement proceedings against petitioner based upon alleged SPDES violations and failure to apply for Part 360 permits. Consent orders were issued in August, 1981, requiring, *inter alia,* that petitioner submit applications for Part 360 permits. The applications were submitted, and the department then notified petitioner that its facility was subject to the State Environmental Quality Review Act (SEQRA; ECL art 8). The department thereafter issued a "positive declaration", requiring the preparation of a draft environmental impact statement. Petitioner thereafter commenced this proceeding, seeking to annul the determination upon the grounds that SEQRA did not apply to its facility and that the determination was arbitrary and capricious. Special Term dismissed the petition (114 Misc 2d 313) and this appeal ensued.

SEQRA requires an environmental impact statement on certain "actions" that may have a significant effect on the environment (ECL 8-0109, subd 2). "Actions" are defined as including "projects or activities involving the issuance to a person of a * * * permit * * * or other entitlement for

use or permission to act by one or more agencies" (ECL 8-0105, subd 4, par [i]). Respondent has concluded that since petitioner's facility is an activity and since a Part 360 permit is now required, the "action" necessary to trigger the SEQRA requirements is present, despite the fact that petitioner's operation of the facility commenced long before SEQRA was enacted. Relying upon the department's definition of "actions" in its regulations, petitioner contends that in the absence of a proposed change in the facility or operation there can be no "action". The regulation defines "actions" as including:

"(1) projects or physical activities, such as construction or other activities which change the use or appearance of any natural resource or structure, which * * *

"(iii) require one or more permits from an agency or agencies" (6 NYCRR 617.2 [b]).

The definition refers not only to activities which change the use or appearance of a structure, but also to those activities which change the use or appearance of any natural resource. Petitioner's operation involves the mining and crushing of shale, the burning of alternative fuels and the generation and storage of industrial and hazardous wastes. There is, therefore, a rational basis for concluding that petitioner is engaged in an activity which changes the use or appearance of one or more natural resources. Petitioner also contends that since it proposes to continue its operation unchanged, it is "maintaining" its facility and thus falls within the exemption for "maintenance or repair involving no substantial changes in existing structure or facility" (ECL 8-0105, subd 5, par [iii]). The term "maintenance", however, clearly does not refer to the day-to-day operation of the facility, but rather it was intended to exclude activities engaged in to keep the facility operating.

The major thrust of petitioner's argument is that since its facility existed and operated before SEQRA came into existence and since no changes in the facility or its operation are proposed, SEQRA should not be applied to it. This argument falls into the general concept of "grandfathering", specifically provided for in ECL 8-0111 (subd 5, par [a]), which excludes "[a]ctions undertaken or approved prior to the effective date of this article".

Respondent contends that the terms "undertaken" and "approved" each apply to different types of "actions" (see ECL 8-0105, subd 4, par [i]). Thus, it is suggested that only "actions" engaged in by agencies are subject to the "undertaken" portion of the "grandfathering" clause, while those "actions" involving the issuance of permits or other entitlement for use or permission to act can be "grandfathered" only under the prior "approval" concept. Pursuant to respondent's interpretation, the "grandfathering" clause would come into play where an agency is not the operator of the facility only where the operator has sought approval of his facility before SEQRA became effective even though no permit or entitlement to operate was then required. Such an interpretation is patently irrational.

SEQRA was enacted by chapter 612 of the Laws of 1975, and pursuant to section 4 of chapter 228 of the Laws of 1976, the act became effective September 1, 1976, except that ECL 8-0113, containing respondent's rule-making authority and responsibility, became effective September 1, 1975. Prior to the September 1, 1976 effective date, petitioner had operated its facility in the same manner it now seeks to continue operating it. Petitioner had sought all the permits and other "approval" then required. Under these circumstances, applying the plain meaning of the "grandfathering" clause (ECL 8-0111, subd 5, par [a]), petitioner's facility is excluded from the requirements of SEQRA (see *Matter of Salmon v Flacke*, 91 AD2d 867). Respondent seeks to use November 1, 1978 as the date for "grandfathering". That date is contained in section 8-0117 (subd 5, par [d]), which provides for "phased implementation" of the environmental impact statement requirement. The "grandfathering" clause, however, refers to the "effective date of this article" (ECL 8-0111, subd 5, par [a]), rather than the phased implementation date. In any event, even using the latter date, petitioner's facility should be "grandfathered". As of that date, there was no allegation that petitioner had failed to apply for or obtain any required permits, and it is unclear whether 6 NYCRR Part 360 was then applicable to petitioner.[*]

---

[*] Respondent did not claim that petitioner was required to obtain Part 360 permits until some two years later, in November, 1980, and petitioner did not concede that such permits were required until after Part 360 was again amended in 1981.

In view of our conclusion that petitioner's facility was excluded from the requirements of SEQRA by the "grand-fathering" clause (ECL 8-0111, subd 5, par [a]), it follows that the determination requiring petitioner to submit an environmental impact statement must be annulled, and the judgment of Special Term denying petitioner's application for such relief must be reversed, and the petition granted.

MIKOLL, YESAWICH, JR., WEISS and LEVINE, JJ., concur.

Judgment reversed, on the law, without costs, petition granted, and determination annulled.