In the Matter of ATLANTIC CEMENT COMPANY, INC., Respondent-Appellant, v HENRY G. WILLIAMS, as Commissioner of the Department of Environmental Conservation of the State of New York, et al., Appellants-Respondents.

Third Department, June 11, 1987

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (James J. Periconi, Peter H. Schiff* and *Val E. Washington* of counsel), for appellants-respondents.

*Lombardi, Devorsetz, Stinziano & Smith (William J. Gilberti, Jr., Albert M. Ferlo, Jr., Joshua H. Heintz* and *Rosemary Stack* of counsel), for respondent-appellant.

## OPINION OF THE COURT

HARVEY, J.

Petitioner operates a mining operation and cement manufacturing facility on approximately 2,000 acres of land in Albany County. It has been in business at that location since 1961 and its operation is one of the largest of its type in the United States. Petitioner employs approximately 500 people and its product is distributed throughout the entire market east of the Mississippi River.

In 1974, the Legislature enacted the New York State Mined Land Reclamation Law (MLRL) (L 1974, ch 1043). Effective in 1975, the MLRL required mine operators to obtain a permit from respondent Department of Environmental Conservation (DEC) in order to continue mining (ECL 23-2711). In that year, petitioner submitted a detailed application which included, among other things, maps of the entire area owned, mining plans, reclamation plans and the required reclamation bond. The application was approved and a permit was issued. Since permits are only issued for periods of one or three years (ECL 23-2711 [3]), petitioner subsequently applied for renewal of its permit.

In response to petitioner's 1978 renewal application, DEC requested that a long-form environmental assessment form (EAF) be submitted. This request was based upon the provisions of the newly enacted State Environmental Quality Review Act (SEQRA) which had become effective in 1976 (L 1975, ch 612). Although petitioner protested the application of SEQRA requirements to it, it nevertheless submitted the requested information. DEC issued a "negative declaration", i.e., a determination that petitioner's activities would not have

a significant impact on the environment and thus that an environmental impact statement (EIS) was not necessary. Petitioner's renewal of the permit was granted.

Petitioner's renewal was approved in 1981 without major incident. On June 11, 1984, DEC received from petitioner the standard renewal application, accompanied by the required fee and reclamation report. Twenty-eight days later, on July 9, 1984, DEC issued a notice of incomplete application indicating that petitioner's application would have to undergo SEQRA review. DEC also sought additional information under its so-called "Life of the Mine Review Policy", which purportedly was based upon various requirements of SEQRA and MLRL.

In April 1985, following petitioner's refusal to provide the additional information, DEC issued a positive declaration under SEQRA, thus requiring petitioner to prepare a draft EIS. DEC then notified petitioner that if the additional submittals were not made by May 1, 1985, its permit renewal application would be denied as incomplete. On April 30, 1985, petitioner commenced the instant CPLR article 78 proceeding challenging the authority of respondent Commissioner of Environmental Conservation to impose the life of the mine review policy, the application of SEQRA to its permit renewal and the denial of its application for renewal. On May 23, 1985, DEC denied petitioner's renewal application upon the ground that it had failed to submit the requested additional information (see, ECL 70-0117 [2]; 6 NYCRR 621.14 [b]). Thereafter, petitioner's article 78 proceeding was heard by Special Term. The court held that DEC's denial of the renewal application on the ground that it was incomplete was illegal, arbitrary and capricious. The court's holding was based primarily on its determination that petitioner's application must be "deemed complete" since DEC failed to notify petitioner within 15 days of receipt of the application that more information was needed (see, ECL 70-0109 [1]). The court also found, in footnotes, that the Commissioner lacked the power to invoke the life of the mine review policy without authorizing legislation; that petitioner's mining activities were grandfathered under SEQRA and, consequently, petitioner was not required to submit an EIS; and, finally, that DEC had already determined that the operation would have no significant environmental impact. Special Term therefore entered a judgment granting the petition to the extent of annulling DEC's determination denying petitioner's renewal application and remitted the matter

to the Commissioner with the direction that he process the renewal application as a complete application in accordance with the decision of the court. Respondents appeal. Petitioner cross-appeals from that part of the judgment which denied its request that respondents be ordered to issue the renewal mining permit immediately.

It is important to note at the outset of our analysis that this dispute involves the renewal of a permit, not an initial application for a permit. Generally, in the absence of a material change in conditions or evidence of a violation of the terms of the permit, a renewal should be granted without unduly burdening the applicant (see, ECL 70-0115 [2]; 6 NYCRR 621.12 [3]; cf., ECL 23-2711 [8], [9]; 30 USC § 1256 [d]). This policy is consistent not only with analogous permit and license renewal procedures in other areas of law (see generally, 12 NY Jur 2d, Business and Occupations, § 1, at 444-445), but also with the express intent of the Legislature to "foster and encourage the development of an economically sound and stable mining and minerals industry" (ECL 23-2703 [1]). To require burdensome information at each renewal, which occurs every one or three years, would create destabilizing uncertainty and additional expense upon the mining industry.

The first issue posed by respondents for consideration is whether Special Term erred in ruling that DEC could not request additional information about petitioner's renewal application after the date that the application was statutorily deemed complete. It is undisputed that the uniform procedures prescribed by ECL article 70 apply to petitioner's renewal application (see, ECL 23-2711 [2]; 70-0107 [3] [i]). ECL 70-0109 (1) (b) provides that "[i]f the department fails to mail written notice to an applicant of its determination whether or not an application is complete within such fifteen calendar day period, the application shall be deemed complete". The interpretation of this statute is significant since petitioner's permit renewal application was received by DEC on June 11, 1984 and DEC did not issue a notice of incomplete application until July 9, 1984, well over the 15-day limit for DEC to respond. Nevertheless, DEC argues that this does not preclude it from seeking additional information. While DEC's argument seems on its face to belie the commonsense meaning of "complete", a closer analysis of the statutory language and its history is necessary to resolve this issue.

This appears to be the first appellate court interpretation of ECL 70-0109 (1) (b); thus, it is instructive to review the

relevant rules of statutory construction to be utilized. It is axiomatic that statutory interpretation must begin with an analysis of the literal language of the statute *(see, e.g., Mills Music v Snyder,* 469 US 153, 164; *Touche Ross & Co. v Redington,* 442 US 560, 568; *We're Assocs. Co. v Cohen, Stracher & Bloom,* 65 NY2d 148, 151). When the language used by the Legislature is clear, judicial inquiry is limited *(Rubin v United States,* 449 US 424, 430; *Matter of Washington Post Co. v New York State Ins. Dept.,* 61 NY2d 557, 565; *Matter of Cristo Bros.,* 97 AD2d 274, 275, *affd* 64 NY2d 975). If any ambiguity exists, the spirit and purpose underlying the statute must be considered together with the language employed *(People v Eulo,* 63 NY2d 341, 354; *Matter of Anderson v Board of Educ.,* 46 AD2d 360, 364-365, *affd* 38 NY2d 897). A provision of a statute should not be construed so as to render it ineffective, nor should the statute be interpreted in a fashion which undermines or erodes the purpose for which it was enacted *(American Lodge Assn. v East N. Y. Sav. Bank,* 100 AD2d 281, 285; *Matter of New York Life Ins. Co. v State Tax Commn.,* 80 AD2d 675, 676, *affd* 55 NY2d 758; McKinney's Cons Laws of NY, Book 1, Statutes §§ 95, 144). Of course, when a statute has been interpreted by an administrative agency and the statute involves matters within the expertise of the agency, deference is given to that interpretation *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459; *Matter of Home Off. Reference Lab. v Axelrod,* 116 AD2d 858, 860, *lv denied* 68 NY2d 601). On the other hand, where the question is merely one of statutory reading and analysis, an agency's interpretation is entitled to little weight *(Kurcsics v Merchants Mut. Ins. Co., supra,* at 459).

■ We see no reason to defer to DEC's interpretation here. Interpretation of these statutes involves statutory reading and analysis, and the accurate apprehension of legislative intent. As is discussed below, ECL 70-0109 (1) (b) was enacted in part to ensure that DEC acted promptly on applications. Since an intent of the statute was to regulate DEC, it would be inconsistent with the goal of ECL 70-0109 (1) to defer to DEC's interpretation of the statute.

While the statutory language appears quite clear on its face, we are cognizant of the oft-stated observation that the absence of facial ambiguity is not always conclusive and that consideration should be given to legislative intent *(see, e.g., Zappone v Home Ins. Co.,* 55 NY2d 131, 137; *Matter of Burrows v Board of Assessors,* 98 AD2d 250, 253, *mod* 64 NY2d 33). Turning to

the purpose underlying the statute, the addition of ECL article 70 was part of the Governor's 1977 legislative program designed to "establish uniform procedures and specific time periods for the processing of permit applications by the Department of Environmental Conservation" (Governor's Mem, 1977 McKinney's Session Laws of NY, ch 723, at 2522). Upon signing the bill into law, Governor Hugh L. Carey listed as a first major provision of the bill the fact that it included "a requirement that the Department give written notice to an applicant within 15 days after the receipt of an application that the application is complete, or a statement of what additional information is needed" (id., at 2523). He further noted that the bill implemented concerns stated in his 1977 annual message to the Legislature that: " 'We must also recognize that the regulation of enterprise increases the costs of production in this State. To assure that the regulatory processes fulfill their intended objectives without costly delays or attention to frivolous concerns, I will recommend ways to simplify the regulatory process of the Department of Environmental Conservation' " (ibid.). As previously noted, ECL article 70 was made applicable to the MLRL (see, ECL 70-0107 [3] [i]) and, indeed, the fact that industry cannot function productively within this State under massive and continual bureaucratic red tape was also recognized as a concern in the enactment of the MLRL. As was previously mentioned, that statute was enacted not only to protect the environment, but also to foster the mining industry (see, ECL 23-2703 [1]).

■ Under ECL article 70, however, it is clear that the determination that an application is complete (either affirmatively by DEC or by operation of ECL 70-0109) does not preclude DEC from requesting *supplemental* information during the course of review of the application (see, ECL 70-0105 [2]; 70-0117 [2]). The failure to produce the requested supplemental information provides a basis for denial of an application (ECL 70-0117 [2]). The apparent purpose for allowing DEC to request supplemental information after the application is complete is to remove from the agency the difficult task of projecting within 15 days of receiving an application all of the possible information which it would need in reviewing the application. The fact that DEC is allowed to request supplemental information, however, cannot be read to authorize the type of information sought by DEC here. Petitioner submitted a renewal application pursuant to the requirements of the MLRL (ECL 23-2711 [8]; see, 6 NYCRR part 421) in the same

form it had used previously and which had been accepted by DEC. DEC failed to notify petitioner within 15 days that its application was incomplete. However, under the guise of seeking supplemental information, DEC sought to force petitioner to comply with the burdensome requirements of its life of the mine review policy. This information cannot be construed as supplemental to the renewal application. Indeed, there is every indication in the record that DEC considered this information a component of the complete application rather than merely supplemental information.* Further, to so construe ECL 70-0109 (1) (b) would not only undermine the intent of ECL article 70 as noted above, but would also, on the facts at hand, run counter to the express provision that a "complete" application includes any draft impact statements required by SEQRA (ECL 70-0105 [2]). It is such an environmental impact statement, among other things, which DEC is seeking as "supplemental" information.

Respondents also challenge on this appeal Special Term's holding that DEC lacked power to invoke its life of the mine review policy. Respondents contend that the life of the mine review policy, which is outlined in an internal DEC memorandum, is not an improperly promulgated rule or regulation but merely a request for information that it is authorized to seek pursuant to SEQRA and MLRL. A review of respondents' argument reveals that they rely heavily on certain provisions in SEQRA to justify their life of the mine review policy. It is thus relevant, in determining whether the life of the mine review policy can be enforced against petitioner, to address petitioner's argument that its activities are "grandfathered" under SEQRA.

■ It is undisputed that ECL 8-0111 (5) (a) excludes certain actions commenced prior to the effective date of SEQRA from the requirements of ECL 8-0109 (2) *(see, Matter of Northeast Solite Corp. v Flacke,* 91 AD2d 57). The Court of Appeals has indicated, in dictum, that proof of a substantial change in the level of operations may be sufficient to negate the grandfather provisions of SEQRA even if the basic nature of the activity remains unchanged *(Matter of Salmon v Flacke,* 61 NY2d 798, 800). Respondents argue that, although petitioner's action was approved prior to the effective date of SEQRA, an EIS is

---

* Respondents' argument, raised in a footnote in their brief on this appeal, that the application should not be deemed complete because it was not "in a form prescribed by the department" (ECL 70-0109 [1] [a]), was not raised at Special Term and is thus precluded from appellate review.

required in this instance because DEC had determined that petitioner proposed a modification of action which may have a significant impact on the environment. Petitioner's basic activities, however, appear to have remained unchanged since prior to the enactment of SEQRA. There is no showing of a significant change in its blasting activities. Although petitioner's activities are approaching abutting properties in some places, the expansion underlying this encroachment was previously reviewed by DEC and is consistent with the nature of mining, i.e., that mining operations progress into different areas *(see, Matter of Concrete Materials v Flacke,* Sup Ct, Onondaga County, June 7, 1982, Lynch, J., *affd* 93 AD2d 1002, *lv denied* 59 NY2d 607). With regard to respondents' assertion that a modification exists because protected wetlands are potentially threatened, the record reveals that DEC already reviewed that issue in connection with the 1979 permit renewal application. The submittals in 1984 do not modify the information provided in 1979. The record fails to disclose any material change in petitioner's mining activities. Hence, petitioner's activities are grandfathered under SEQRA.

Having determined that petitioner's activities are grandfathered under SEQRA, it follows that DEC's positive declaration and request for an EIS were unlawful. Further, to the extent respondents' life of the mine review policy relied on SEQRA, it was unlawful as applied to petitioner. Respondents also rely on the MLRL to justify the information sought upon petitioner's renewal. We note, however, that the principal sections cited by respondents as providing authority for the information sought *(see, e.g.,* ECL 23-2713) pertain to the issuance of new permits and not renewal permits. We cannot extrapolate from the MLRL the authority for DEC to seek all the information required by its life of the mine review policy. Accordingly, we agree with Special Term's decision that respondents have failed to show that they are authorized to require petitioner to provide the information sought under their life of the mine review policy.

■ Finally, we turn to petitioner's assertion, on its cross appeal, that Special Term erred in failing to direct DEC to renew its mining permit. The arbitrary refusal of an agency to renew a permit can be remedied through mandamus *(see, Matter of Small v Moss,* 277 NY 501, 507; *Matter of Filmways Communications v Douglas,* 106 AD2d 185, *affd* 65 NY2d 878). However, if the record fails to establish a clear right to the relief sought, the matter should be remitted to the agency for

an exercise of its discretion in matters not resolved on the record (see, *Matter of City of Newburgh v Public Employment Relations Bd.,* 63 NY2d 793, 795; *Matter of State of New York v King,* 36 NY2d 59, 62; *Matter of Kupersmith v Public Health Council,* 101 AD2d 918, 919, *affd* 63 NY2d 904). DEC's current refusal to issue a renewal is based on grounds which this court now holds to be erroneous; thus, it is not within DEC's discretion to continue to deny renewal upon these grounds. However, the record is not clear as to whether other grounds remain over which DEC may exercise its discretion. Since petitioner failed to establish a clear right to the relief requested (negating the existence of any discretion with DEC), we conclude that Special Term properly concluded that the matter must be remitted to DEC. Hence, the judgment must be affirmed.

MAHONEY, P. J., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment affirmed, without costs.