In the Matter of MEADOW BROOK EQUITIES, LTD., Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

Third Department, October 8, 1987

## APPEARANCES OF COUNSEL

*DeGraff, Foy, Conway, Holt-Harris & Mealey (William F. Helmer* of counsel), for appellant.

*Robert Abrams, Attorney-General (Lawrence A. Rappoport* of counsel), for respondents.

## OPINION OF THE COURT

KANE, J.

Petitioner seeks to construct a 150-unit condominium development in the Village of Tannersville, Greene County. In December 1983, petitioner applied to respondent Department of Environmental Conservation (hereinafter DEC) for a freshwater wetlands permit, a stream disturbance permit and a State pollutant discharge elimination system permit (hereinafter the permits) in order to proceed with construction.

The village acquired its own water supply system in 1972. The village, however, did not apply for a water supply permit until February 1980. Upon receipt of the village's overdue permit application, DEC noted several deficiencies and issued a notice of incomplete application to the village. DEC requested, *inter alia,* information concerning the "safe yield" of the village's groundwater and surface water sources. Despite several notices of incomplete application and five years of correspondence, however, the village failed to supply DEC with the necessary information. Consequently, the village never received a water supply permit.

Following petitioner's application for its permits, DEC informed petitioner by letter dated March 8, 1984 that either petitioner or the village would have to obtain a water supply permit covering the water supply for the proposed development. In the alternative, DEC stated that it would issue the permits if petitioner developed its own water supply (in lieu of connection with the village's water supply) and obtained a permit for the operation of such independent supply.

Thereafter, in September 1984 DEC issued a "negative declaration" pursuant to ECL article 8 (hereinafter SEQRA) indicating that petitioner's project would not have a significant effect on the environment. On October 2, 1984 DEC issued petitioner a "notice of complete application" with respect to the permits. The notice of SEQRA compliance and the notice of complete application both assumed that petitioner would be connecting into the village's water supply and that the village would in due course supply the necessary information concerning the outstanding issue of water supply.

Due largely to the village's failure to timely cooperate, on November 30, 1984 a meeting took place between DEC and

petitioner's representatives. The record indicates that DEC expressed concern at that meeting over the sufficiency of the village's water supply and the village's ability to sustain petitioner's project. Petitioner, apparently for the first time, then learned of the village's failure to obtain a water supply permit. Thereafter, petitioner's engineer, John D. Rusack, initiated extensive correspondence with officials of the village, hoping to cause the village to obtain a water supply permit by supplying DEC with the necessary "safe yield" information.

On June 24, 1985, petitioner wrote to respondent Commissioner of DEC complaining of DEC's failure to act on the applications. Thereafter, petitioner wrote two further letters, dated July 16, 1985 and July 25, 1985, referring to the letter of June 24, 1985. The Commissioner responded on August 14, 1985. In his letter, the Commissioner advised petitioner that DEC could not act upon the permit applications until it received the necessary water supply information.

During September 1985, Rusack actively attempted to secure the necessary water supply information. However, when this issue was not yet resolved to the satisfaction of DEC, petitioner sent a letter on January 10, 1986 to the Commissioner stating, *inter alia,* that issuance of the permits had long since become mandatory pursuant to ECL 70-0109. DEC responded on January 22, 1986, informing petitioner that the permits were denied, that the denial was without prejudice to reconsideration upon receipt of the village's water supply data and that petitioner could request a hearing on the denial pursuant to 6 NYCRR 621.8 (g). Petitioner wrote a letter of "appeal" to the Commissioner and received, in response, a letter from DEC dismissing petitioner's various arguments. Petitioner did not request a hearing. Instead, petitioner commenced the instant proceeding pursuant to CPLR article 78. Supreme Court dismissed the petition and this appeal by petitioner ensued.

Initially, petitioner contends that due to DEC's inactivity the permits issued by operation of law. Specifically, petitioner cites to ECL 70-0109 (3) (a) (i), which provides that within 90 calendar days after DEC mails a notice of complete application, it is required by law to issue a decision on a permit application. In this regard, ECL 70-0109 (3) (b) provides that: "If the department [DEC] fails to mail a decision on an application for a permit within the time periods specified, the applicant may cause notice of such failure to be made to the department by means of certified mail return receipt re-

quested addressed to the commissioner. If, within five working days after the receipt of such notice, the department fails to mail a decision, the application shall be deemed approved and a permit deemed granted subject to any standard terms or conditions applicable to such a permit".

Petitioner contends that the letter of June 24, 1985 constituted notice to DEC in accordance with ECL 70-0109 (3) (b) and that, when DEC failed to render a decision upon the permits, the permits issued by operation of law. Supreme Court agreed with DEC's contention that the letter of June 24, 1985 did not serve to give sufficient notice under ECL 70-0109 (3) (b) to trigger operation of the statute. A review of the record wholly supports DEC's position. First, the letter of June 24, 1985 contains no mention of ECL 70-0109 or any suggestion that petitioner was seeking to invoke the statute's provisions in order to get a decision on its applications. Indeed, petitioner's argument that such letter constituted notice pursuant to ECL 70-0109 is belied by the record and in particular by its own actions. Petitioner had repeatedly been informed that no permits could be granted until the question of water supply had been resolved. In fact, subsequent to the letter in question, petitioner's own engineer, Rusack, was attempting in September 1985 to secure the required information. Certainly, such actions are not consistent with petitioner's present position. Moreover, in contrast, petitioner's letter of January 10, 1986 makes specific reference to ECL 70-0109.

Assuming, arguendo, that the instant proceeding is timely and that petitioner exhausted its administrative remedies, we turn to a consideration of the merits of DEC's denial of the permit application. In this regard, DEC has admitted that its concern over the village's water supply was the sole reason for denial of petitioner's permits. Petitioner contends that since the availability of a water supply is not a specific requirement for any of the permits, the denial of the permit applications was arbitrary and capricious. This contention is without merit.

As DEC notes, a condominium development cannot exist without a permitted water supply (ECL 15-1501). Pursuant to ECL 70-0117 (2) and 6 NYCRR 621.14 (b), DEC is authorized, during the review of an application for a permit, to request additional information which is necessary to make any findings or determinations required by law (see, Matter of Atlantic Cement Co. v Williams, 129 AD2d 84, 90). In the context of this case, DEC's inquiry into the water supply issue was

highly relevant and legitimately motivated *(see,* ECL 15-1501). The determination to deny petitioner's applications without prejudice was therefore reasonable. The petition was properly dismissed and we accordingly affirm.

MAHONEY, P. J., MAIN, CASEY and YESAWICH, JR., JJ., concur.

Judgment affirmed, without costs.