In the Matter of SEABOARD CONTRACTING & MATERIAL, INC., Respondent, v DEPARTMENT OF ENVIRONMENTAL CONSERVATION OF THE STATE OF NEW YORK, Appellant, and TOWN OF SMITHTOWN, Proposed Intervenor-Appellant.

Third Department, November 25, 1987

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Albert M. Bronson, Peter H. Schiff* and *Douglas H. Ward* of counsel), for appellant.

*Cole & Deitz (Joseph DiBenedetto* and *Paul A. Gallay* of counsel), for respondent.

*Sandra L. Berman, Town Attorney (Thomas A. Abbate* and *Devitt & Spellman [Brian Callahan]* of counsel), for proposed intervenor-appellant.

## OPINION OF THE COURT

WEISS, J.

Petitioner commenced the instant CPLR article 78 proceeding seeking to compel respondent to issue a mining permit pursuant to the provisions of the Mined Land Reclamation Law (ECL art 23, tit 27 [hereinafter MLRL]), or, in the alternative, to redesignate itself as the lead agency on petitioner's pending permit application. A brief recitation of the underlying events is in order.

On or about August 2, 1985, petitioner applied to respondent for a permit to mine sand and gravel on an 18-acre parcel located in the Town of Smithtown, Nassau County *(see,* ECL 23-2711 [1]). Respondent classified the project as type I for purposes of review under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) and, on September 26, 1985, designated the town as "lead agency". Respondent thereafter rejected petitioner's request that it redesignate itself as lead agency, finding that the town was not without jurisdiction to act in this capacity. In the meantime, the town requested additional information from petitioner, the last of which was provided on February 6, 1986. One week later, the town returned petitioner's application on the premise that it "no longer accept[ed] applications for regrading and excavating permits". By letter dated February 28, 1986, petitioner notified both the town and respondent that the town's failure to make a timely determination of environmental significance as required by 6 NYCRR former 617.6 (d) (2)[1] resulted in a de facto declaration of nonsignificance. On March 20, 1986, the town responded by issuing a declaration of environmental significance. Nonetheless, by letter dated

---

1. We note that the SEQRA regulations contained in 6 NYCRR part 617 were amended in March 1987, but the former version pertains to the instant proceeding (6 NYCRR 617.20).

May 1, 1986, petitioner demanded that respondent issue the mining permit within five days. By letter dated May 9, 1986, respondent rejected the demand as premature, noting that petitioner's application would not be complete until the requirements of SEQRA had been met. The instant proceeding ensued. Thereafter, Supreme Court granted petitioner's motion for summary judgment and directed respondent to issue petitioner a mining permit. Additionally, the court denied respondent's cross motion for an order consolidating the instant proceeding with another action pending in Nassau County between petitioner and the town. Respondent has appealed. The town has appealed from Supreme Court's order denying its motion to intervene in this proceeding.

In our view, Supreme Court erred in granting petitioner summary judgment and directing the issuance of a mining permit. The initial premise underlying petitioner's argument is that the town's failure to make a determination of environmental significance by February 21, 1986, i.e., 15 days after receiving all pertinent information, resulted in a de facto declaration of nonsignificance for purposes of SEQRA review. Once this occurred, petitioner maintains that respondent was obligated to make a decision on the permit request within 90 days pursuant to the Uniform Procedures Act (ECL art 70 [hereinafter UPA]) (see, ECL 70-0109 [3] [a] [i]). Since respondent ostensibly failed to timely respond to petitioner's May 1, 1986 demand letter, petitioner concludes that the permit must be granted (see, ECL 70-0109 [3] [b]). The argument fails for several reasons.

It is undisputed that the town did not comply with the 15-day time limitation set forth in 6 NYCRR former 617.6 (d) (2). Petitioner, however, has misperceived the consequence of the town's delay. By its terms, the regulation does not provide any penalty for untimeliness. In our view, the regulation does not work a limitation on the actual authority of a lead agency to complete SEQRA review and is directory rather than mandatory in nature (see, Matter of Grossman v Rankin, 43 NY2d 493, 501; Matter of Tri Cities Indus. Park v Commissioner of Dept. of Envtl. Conservation, 76 AD2d 232, 236, lv denied 51 NY2d 706; compare, Matter of 400 Del. Ave. Prop. Co. v State of New York Div. of Hous. & Community Renewal, 105 AD2d 1046). Thus, the town's delay did not, as petitioner suggests, result in a de facto negative declaration.

Petitioner would have us superimpose the default provision delineated in ECL 70-0109 (3) (b) on the SEQRA regulation in

issue. We fully recognize that the UPA applies to the instant request for a mining permit (see, ECL 23-2711 [2]; 70-0107 [3] [i]; *Matter of Atlantic Cement Co. v Williams,* 129 AD2d 84, 88). The UPA does impose specific time periods within which respondent must act on permit applications. In an instance, as here, where no public hearing has been held, respondent is required to mail a decision within 90 calendar days after a permit application is deemed complete (ECL 70-0109 [3] [a] [i]). In the event respondent fails to act within the 90-day time limit, "the applicant may cause notice of such failure to be made to [respondent] * * * If, within five working days after the receipt of such notice, [respondent] fails to mail a decision, the application shall be deemed approved and a permit deemed granted" (ECL 70-0109 [3] [b]).

It is evident that the UPA default provisions are mandatory, not directory in nature. We do not, however, deem it appropriate to impose the UPA strictures on the pertinent SEQRA regulations. Significantly, the UPA accommodates an instance where, as here, a lead agency other than respondent undertakes SEQRA review. ECL 70-0109 (4) specifically tolls the 90-day time period within which respondent is required to rule on a permit application pending the completion of the SEQRA review process by the lead agency (see, *Tayntor v New York State Dept. of Envtl. Conservation,* 130 AD2d 571). This provision evinces a legislative recognition that the time limitations delineated in the UPA must be distinguished from the SEQRA review process. This is not to suggest that a lead agency enjoys unbridled authority to delay SEQRA review, but the short delay here was clearly not excessive as a matter of law (see, *Matter of East Clinton Developers v Town of Clinton,* 88 AD2d 416, 423).

It follows that respondent properly rejected petitioner's May 1, 1986 demand letter as premature (see, *Tayntor v New York State Dept. of Envtl. Conservation, supra,* at 572). The event triggering the 90-day time limit delineated in ECL 70-0109 (3) (a) (i) is the *completion* of the permit application. But the application cannot be considered complete until SEQRA review is concluded, either when the lead agency makes a negative declaration or, in the case of a positive declaration, a draft environmental impact statement (hereinafter DEIS) is approved and a final environmental impact statement (hereinafter FEIS) is filed with respondent (ECL 8-0109 [4], [5]; 70-0105 [2]; 6 NYCRR 617.3 [former (e)]; 621.3 [a] [5]; *see, Tayntor v New York State Dept. of Envtl. Conservation, supra).* As

indicated, the permit application process is held in abeyance pending this review (ECL 70-0109 [4]).

■ Here, the town made a positive declaration on March 20, 1986 and petitioner has apparently submitted a DEIS. Since a FEIS has yet to be filed with respondent and the time requirements imposed by ECL 70-0109 remain tolled pursuant to ECL 70-0109 (4), petitioner's permit demand is premature and respondent is precluded from acting on the application (see, 6 NYCRR 617.3 [former (a)]; 621.9 [a] [4]; Matter of East Clinton Developers v Department of Envtl. Conservation, 109 Misc 2d 786). Accordingly, Supreme Court erred in directing the issuance of a mining permit. We further emphasize that relief in the nature of mandamus to compel the issuance of a permit was not appropriate here since petitioner failed to establish a clear right to the relief sought; respondent performs a discretionary, not a mere ministerial, function in reviewing permit applications (see, Matter of Atlantic Cement Co. v Williams, 129 AD2d 84, 92-93, supra; Matter of East Clinton Developers v Department of Envtl. Conservation, supra, at 787).

Petitioner further challenges respondent's designation of the town as lead agency and maintains that, at the very least, respondent should redesignate itself as lead agency.[2] Our threshold inquiry is whether the town's designation as lead agency is even reviewable, for generally only final determinations are subject to review under CPLR article 78 (CPLR 7801 [1]). SEQRA determinations have been characterized as preliminary steps in the decision-making process (see, Matter of Wing v Coyne, 129 AD2d 213, 216; Matter of Save the Pine Bush v City of Albany, 117 AD2d 267, mod on other grounds 70 NY2d 193). However, a final determination is not a prerequisite to a mandamus proceeding where the right to relief is "clear" and the duty to be enforced is enjoined by law (Matter of Hampton's Hosp. & Med. Center v Moore, 52 NY2d 88, 96). The question thus distills to whether petitioner has established a clear right to have DEC redesignate itself as lead agency.

■ This argument focuses on whether the town has a jurisdictional basis to act as lead agency. The SEQRA regulations imply that only an "involved agency" may be designated as lead agency (see, 6 NYCRR former 617.6 [d], [e]). An

2. We note that the revised regulations do provide for such a redesignation where the lead agency's basis of jurisdiction fails (6 NYCRR 617.6 [f] [1] [ii]).

"involved agency" is defined as "an agency that has jurisdiction by law to fund, approve or directly undertake a given action" (6 NYCRR 617.2 [former (q)]). The parties agree that the town's jurisdiction rests on the validity of Local Laws, 1984, No. 12 of the Town of Smithtown (hereinafter the Tree Ordinance), which authorizes the town to regulate the removal of trees, an obvious incident of mining. Respondent essentially acknowledges that if the Tree Ordinance was declared invalid, the town would be disqualified from acting as lead agency and respondent would necessarily have to assume that role. Petitioner maintains that the Tree Ordinance is preempted by the MLRL (ECL 23-2701 *et seq.; see, Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation,* 125 Misc 2d 441, *affd* 113 AD2d 62, *lv denied* 68 NY2d 612; *compare, Frew Run Gravel Prods. v Town of Carroll,* 125 AD2d 928, *lv granted* 69 NY2d 609; *Morrell v C.I.D. Landfill,* 125 AD2d 998, *lv denied* 69 NY2d 612). Notably, petitioner has commenced a separate declaratory judgment action against the town seeking to declare this ordinance invalid on the very same preemption basis. Inasmuch as the town is not a party to the present proceeding, we decline to rule on the merits of the preemption issue. At this juncture, we find it necessary to observe that Supreme Court erred in denying respondent's motion to consolidate this proceeding with petitioner's separate action against the town. There is a clear identity of issue between the two controversies, the resolution of which has collateral estoppel implications, and since petitioner is a party in each matter, it is difficult to perceive any prejudice from consolidation.

For present purposes, the Tree Ordinance remains facially valid, thus confirming a jurisdictional predicate for the town's status as lead agency. Since the town has decision-making authority, albeit not the ultimate authority to issue or deny the mining permit, and is clearly concerned with the local impact of the project (6 NYCRR former 617.6 [d] [1] [i]), we cannot say that respondent's designation of the town as lead agency was irrational *(see, Matter of Congdon v Washington County,* 130 AD2d 27, 32). The ultimate conclusion to be drawn here is that petitioner has failed to establish a clear right to compel a redesignation of respondent as lead agency. It follows that the lead agency issue is not ripe for judicial review.

MAHONEY, P. J., KANE and YESAWICH, JR., JJ., concur with WEISS, J.; LEVINE, J., not taking part.

Judgment reversed, on the law, without costs, motion for summary judgment denied and cross motion to consolidate granted.

Appeal from order dismissed, as academic, without costs.