OPINION OF THE COURT
Lawrence E. Kahn, J.
On March 17, 1981, petitioner submitted a mining permit application and reclamation report to mine approximately two acres of land in the Town of Colonie, Albany County, New York. This acreage is part of a 110-acre parcel which petitioner alleges has been used in its sand and gravel mining business since prior to 1962. In support of its application, petitioner submitted a mined land use plan which indicated that "approximately two acres are estimated to be excavated for the permit term [and] at this time there is no definite planned future use of the bank and the area will be left as open grassland * * * Reclamation will take place in one process at the end of the mining activity. The mine is too small to make progressive reclamation possible.” Thereafter, on or about June 17, 1981, the application was amended to provide for the mining of 8.15 acres. On March 17, 1982, petitioner was issued Permit No. 00180 in accordance with its application. The accompanying instructions provided that "[t]his permit applies only to the project defined by the Mined Land Use Plan. The State Environmental Quality Review Act requires a full project review if there are any significant project modifications.” .
By permit application dated September 4, 1984, petitioner applied for a renewal. The accompanying written report, prepared by C.T. Male Associates, P. C., indicated that the 1984 application is for the entire 110-acre parcel, and that mining operations will be conducted within 25 feet of the boundaries of the property "allowing for the retention of existing vegetation as a visual buffer between the mine and adjacent properties.”
After various preliminary issues were resolved either administratively or through litigation, on or about March 23, 1987, respondent assumed lead agency status vis-á-vis petition *937 er’s renewal application and issued a positive declaration pursuant to State Environmental Quality Review Act (SEQRA). It determined that the 1984 renewal application must be accompanied by a draft environmental impact statement and that petitioner must prepare a mined land use plan for the entire parcel.
The instant CPLR article 78 proceeding seeks to annul respondent’s determinations which resulted in a refusal to renew petitioner’s mined land permit. It seeks to require issuance of a renewal mining permit, together with a declaration that the mining operation is exempt and excluded from the provisions of SEQRA. It seeks injunctive relief restraining respondent from requiring compliance with the life of mine review policy and/or requiring any further submissions by petitioner.
On the initial return date of the proceeding, respondents moved to dismiss upon various objections in point of law. By decision dated July 17, 1987, the court denied respondent’s motion and directed it to serve and file its answer. Thereafter, the court granted a motion by respondents Burgess, Mitikarian, Zanghi and Rivieria Estates Homeowners Association to intervene as party respondents. Additional time was afforded for further submissions and the matter was heard upon oral argument on November 24, 1987.
As a preliminary issue, by motion returnable on the date of oral argument, respondents seek leave to serve a proposed second amended answer. The new pleadings would add additional language to paragraph (11) of the amended answer "in order to expand upon one of the grounds for denying Guptill’s grandfathering claim.”
Amendments to pleadings are to be freely given, absent prejudice and surprise or some basic pleading defect. (Powe v City of Albany, 130 AD2d 823.) CPLR 3014 provides that pleadings "shall consist of plain and concise statements in consecutively numbered paragraphs. Each paragraph shall contain, as far as practicable, a single allegation.” Paragraph (11) of respondent’s amended answer provides that "upon information and belief, Guptill’s mining operation is not grandfathered under SEQRA”. That, in and of itself, is a sufficiently pleaded affirmative defense. The remaining multiple subdivisions of the paragraph contain legal arguments and recitations of specific case law.
The court is aware that pleading rules relegate draftsman *938 ship to a secondary position. "The pleading can be pathetically drawn; it can reek of miserable draftsmanship. That is not the inquiry.” (Siegel, NY Prac §208, at 245.) Mindful that such defects should be substantially ignored, nevertheless, the court is constrained to adhere to the basic philosophy that a pleading may not be utilized as a subterfuge for a memorandum of law. It shall not encourage such draftsmanship by affirmatively granting a request for relief which seeks to add additional language which is inappropriate to pleading an affirmative defense.
Chapter 1043 of the Laws of 1974 enacted the New York State Mined Land Reclamation Law. This legislation sought to bring some order and stability to mining operations by mandating that permits be obtained from the Department of Environmental Conservation (DEC). The legislation recognized the economic benefits of a viable mining industry, and had as one of its principal goals the elimination of burdensome renewal application procedures. This legislative policy and philosophy has received judicial scrutiny and approval. As the Appellate Division noted in Matter of Atlantic Cement Co. v Williams (129 AD2d 84, 88), "To require burdensome information at each renewal, which occurs every one or three years, would create destabilizing uncertainty and additional expenses upon the mining industry.”
Reviewing the submissions before it, it is without doubt that petitioner’s 1984 application seeks a modification of its existing permit in a significantly substantial manner. The initial application, review and permit process was specifically limited to a very small site in the middle of the 110-acre tract. This relatively insignificant activity was properly the subject of a negative declaration. However, the 1984 application, while designated by petitioner as "renewal”, is in actuality an entirely different proposal, one which has never been subject to the permit application process or mined land reclamation review. Factually, it is categorically the converse of Atlantic Cement (supra), wherein Atlantic’s initial permit application included mining and reclamation plans for "the entire area owned.” Unlike Atlantic (supra), this is not an instance where petitioner’s expansion to the boundaries of its property have previously been reviewed by DEC. While it may be consistent in a generic sense with the nature of mining as such operations progress from one area of the site to another, it is not at all consistent with petitioner’s initial 1981 mined land use plan which, as aforesaid, indicated that at that time there was *939 no definite planned future use other than the limited mining in the area restricted by the initial permit.
In sum, this is not the type of renewal application in which the Legislature sought to reduce unduly burdensome submissions by applicants such as petitioner. Rather, this is precisely the type of proposed activity which the permit process seeks to review in the first instance.
Likewise, petitioner is not entitled to avail itself of the grandfathering provisions of SEQRA. "The Court of Appeals has indicated, in dictum, that proof of a substantial change in the level of operations may be sufficient to negate the grandfather provisions of SEQRA even if the basic nature of the activity remains unchanged (Matter of Salmon v Flacke, 61 NY2d 798, 800).” (Matter of Atlantic Cement Co. v Williams, 129 AD2d 84, 91, supra.) Herein, DEC correctly asserts that even if petitioner was mining prior to 1981, an environmental impact statement is mandated in that the 1984 application proposes a modification which is a significant change in previous operations at the site.
The petition shall be dismissed.