■ In the Matter of BENLEVI OBEDIAN & BENLEVI et al., Appellants-Respondents, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent-Appellant, and CITY OF NEW YORK, Respondent.—In a proceeding pursuant to CPLR article 78, inter alia, to compel the New York State Department of Environmental Conservation (hereafter the DEC) and the City of New York to issue certain permits permitting the petitioners to build on their property, the petitioners appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (Joy, J.), dated August 28, 1986, as failed to compel the respondent DEC to grant the petitioners' application dated October 18, 1985, for a tidal wetlands permit, and the DEC cross-appeals, as limited by its brief, from so much of the same order as directed it to render a decision on the application within 90 days from its receipt of the order or a completed application, whichever was later.

Ordered that on this court's own motion, the notice of appeal and notice of cross appeal are treated as applications for leave to appeal, those applications are referred to Presiding Justice Mollen, and leave to appeal is granted by Presiding Justice Mollen; and it is further,

Ordered that upon the appeal and cross appeal by permission, the order is modified, by deleting the second decretal paragraph thereof, and substituting therefor a provision deeming the petitioners' application dated October 18, 1985 for a tidal wetlands permit to be complete and ordering the DEC to render a determination, as expeditiously as possible, in accor-

dance with the provisions of ECL articles 8 and 70; as so modified, the order is affirmed, without costs or disbursements.

The petitioners own property located in an area of Queens County commonly referred to as "Udall's Cove Ravine" (hereafter the ravine). In July 1974 the ravine was designated an "area immediately adjacent to tidal wetlands" subjecting it to a regulation under the Tidal Wetlands Act (ECL art 25). It does not appear that the petitioners or their predecessors in interest ever challenged this designation pursuant to ECL 25-0201 (5). In 1976 the petitioners filed an application for a permit pursuant to ECL 25-0401 which was denied because "the project does not meet the criteria for a Tidal Wetlands Permit". The petitioners did not appeal or seek judicial review of this determination.

On appeal the petitioners argued that the DEC was misleading the court to believe that they were the same persons who had owned the property when it was originally designated a wetland. The petitioners claimed that there had been a change in ownership. However, at oral argument it was conceded that at least some of the present owners are identical with several of the original owners.

In March 1983 the petitioners filed a new application with the DEC. This application was denied in August 1983 on the ground that pursuant to ECL 25-0403 (2) the City of New York was in the process of acquiring the property by eminent domain. Although the petitioners did seek judicial review of this denial, their application was ultimately dismissed as untimely (see, Matter of Obedian v New York State Dept. of Envtl. Conservation, 108 AD2d 749).

In early 1985 the petitioners applied to the New York City Department of Buildings for a building permit, which application was denied in May 1985 because they had failed to secure a permit from the DEC. This decision was sustained by the New York City Board of Standards and Appeals. On October 18, 1985, the petitioners again applied to the DEC for a permit. Although their property was subject to regulation under the Tidal Wetlands Act (ECL art 25), the petitioners' application was for a permit under the Freshwater Wetlands Act (ECL art 24). In a letter dated October 30, 1985, the DEC invited the petitioners to discuss their proposal since it appeared fairly similar to their previous applications, both of which had been denied.

On or about December 18, 1985, the petitioners commenced this proceeding against the City of New York and the DEC,

*inter alia,* to compel them to issue a permit. On December 31, 1985, the DEC denied the petitioners' application for a permit because the city was "still proceeding" with acquisition of the property.

In a hearing held before the Supreme Court, Queens County, on February 6, 1986, the DEC advised the court that the city was not actively engaged in acquiring the subject property and therefore the DEC would review the petitioners' application and make a decision on the merits. The petitioners therefore argued that DEC should be forced to issue them a permit because their application was deemed to be complete under ECL article 25 since DEC had not sent the petitioners a notice of incomplete application within 15 days of the agency's receipt of the October 18, 1985 application. After the hearing, on February 11, 1986, the DEC sent the petitioner a "Notice of Incomplete Application".

In a memorandum decision dated May 5, 1986, the Supreme Court found that there had been no de facto taking of the petitioners' property. It did find, however, that the DEC's denial of the permit application was an abuse of discretion since the city's mere intent to acquire the property was "ineffective to invoke the provisions of [ECL] 25-0403 * * * unless the State or City has actually commenced condemnation proceedings or negotiations for the acquisition of the property". The court confirmed the determination of the New York City Department of Buildings denying a building permit since ECL article 25 "proscribes local agencies from granting any permit at variance with DEC regulations". The court vacated the determination of the DEC dated December 31, 1985 and remitted the matter to the DEC. The decision indicated that DEC had 60 days from the entry of judgment to render a decision or "that part of the petition seeking an order compelling the DEC to issue a permit * * * is granted". The DEC submitted a proposed counterorder which vacated its decision "on DEC's consent", and remitted the matter to the agency to process the application pursuant to ECL articles 8, 25 and 70. The order signed by the court vacated the DEC's determination dated December 31, 1985, "upon DEC's consent" and directed the agency to "render its decision within 90 days from receipt by it of a copy of this order with notice of entry, or a completed application, whichever is later". That order further provided that in the event the agency did not render its decision within 90 days, a judgment compelling the DEC to issue a permit would be granted.

On appeal the petitioners argue that the denial of their

application by the DEC amounted to a de facto taking of their property. "A landowner who claims that land regulation has effected a taking of his property bears the heavy burden of overcoming the presumption of constitutionality that attaches to the regulation and of proving every element of his claim beyond a reasonable doubt * * *. To be successful he must establish that the regulation attacked so restricts his property that he is precluded from using it for any purpose for which it is reasonably adapted" *(de St. Aubin v Flacke,* 68 NY2d 66, 76-77). In the instant case, the petitioners claim that the denial of their permit pursuant to ECL 25-0403 (2) amounted to a temporary regulatory taking under the rule laid down in *First English Evangelical Lutheran Church v Los Angeles County* (482 US 304). In that case the regulation in question prohibited any construction within an area designated as an interim floodplain. The Supreme Court did not decide whether the regulation did effect a taking of the property in question. It merely held that the Fifth Amendment of the US Constitution required governments to pay for "temporary" regulatory takings, even if the regulation was subsequently held to be invalid *(First English Evangelical Lutheran Church v Los Angeles County, supra,* at 321-322). It is clear however, that the statute attacked here does not effect a temporary regulatory taking. The statute merely provides the "substantive criteria for the granting, denial and limiting of permits" (Weinberg, Practice Commentary, McKinney's Cons Laws of NY, Book 17½, ECL 25-0403, at 537). Moreover ECL 25-0404 provides for judicial review of decisions on permit applications, and if the court finds that a taking has occurred, the Commissioner of the DEC can either grant a permit or move to acquire the property under eminent domain.

We agree with the petitioners that, under the provisions of ECL 70-0109 (1) (a) and (b), their application dated October 18, 1985 must be deemed to be complete since DEC failed to send them a notice of an incomplete application within 15 days of the agency's receipt of the application *(see, Matter of Atlantic Cement Co. v Williams,* 129 AD2d 84, 89-90). We also accept the petitioners' claim, raised at oral argument, that the construction they plan for their parcel is a "minor" project as defined in ECL 70-0105 (3) and 6 NYCRR 621.1. This conclusion is further reinforced by the fact that the DEC advised the petitioners that the fee for processing their application was $10, which is undeniably the fee for a minor project *(see,* 6 NYCRR 621.4 [j] [3]). However we reject the petitioners'

argument that because their project is within the "minor" category, the DEC is precluded from securing any additional information in order to process their application. Our reading of the law and regulations does not lead us to such a conclusion. ECL 70-0105 (2) and 70-0117 (2) provide that DEC may request supplemental information even where a project is "minor."

Raised for the first time on appeal is the petitioners' contention that the DEC has no jurisdiction over their property because it was improperly designated as an area adjacent to wetlands in contravention of DEC regulations. The petitioners claim that their property is over 1,500 feet from the actual wetland and under 6 NYCRR 661.4 (b) (1) (i), an adjacent area, within New York City, cannot be more than 150 feet from the most landward boundary of a tidal wetland. However, 6 NYCRR 661.4 (b) did not become effective until August 1977, three years after the petitioners' property was designated an adjacent area. The designation of the petitioners' property was made pursuant to 6 NYCRR 660.1 (c) (1) which provided that an adjacent area "shall extend for a distance of 300 feet * * * landward" from the tidal wetland, "[u]nless the commissioner shall otherwise determine in a particular case". Such a determination was, in fact, made by the Commissioner with regard to the whole of the ravine.

It was error for the court to order DEC to render a decision within 90 days of its receipt of a completed application since the time limit imposed fails to consider certain extensions given the agency by ECL 70-0109 (4). Thus, while the DEC cannot be compelled at this time to issue a permit to the petitioners, absent a showing of a "clear right" thereto *(see, Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88, 92), we emphasize that given the fact that the petitioners have been denied a decision for almost three years, the DEC should move as expeditiously as possible to render a determination.

The order appealed from did not conform to the provisions contained in the court's memorandum decision since it, *inter alia,* extended the time period within which DEC could render a decision from 60 to 90 days. This was error *(see, LeBlanc v Ploss,* 131 AD2d 441; *Matter of Wallfor, Inc. v Eaton,* 127 AD2d 838). However, in light of our determination which effectively modifies both the order and the decision, this point is academic.

We have reviewed the petitioners' remaining contentions

and find them to be without merit or nonreviewable. Mollen, P. J., Mangano, Kunzeman and Weinstein, JJ., concur.