In the Matter of FLETCHER GRAVEL COMPANY, INC., Respondent, v THOMAS C. JORLING, as Commissioner of the Department of Environmental Conservation, et al., Appellants.

Fourth Department, April 24, 1992

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Michael Moore* of counsel), for appellants.

*Devorsetz, Stinziano, Gilberti & Smith (Rosemary Stack* of counsel), for respondent.

### OPINION OF THE COURT

GREEN, J.

Petitioner operates a quarry on approximately 150 acres of land in Onondaga County. A quarry has existed on the site since the 1920's. Petitioner first leased land for quarry purposes in the 1950's and purchased the land in 1961. The operation of the quarry predated local zoning ordinances, and the quarry has been operating as a preexisting, nonconforming use since 1965.

In 1975, the Legislature enacted the Mined Land Reclamation Law (MLRL) (ECL 23-2701 *et seq.*). Pursuant to that legislation, petitioner submitted to the Department of Environmental Conservation (DEC) an application for a permit to continue its mining activities. The permit was issued, and petitioner's subsequent applications for amendments and renewals of the permit were routinely granted. Beginning in 1980, the DEC allowed petitioner to amend its plan to commence quarrying limestone in addition to sand and gravel. The DEC approved petitioner's 1987 renewal application, describing petitioner's operation as consisting of "a 150-acre surface unconsolidated sand and gravel mine, consolidated limestone mine, and attendant processing facilities".

In 1988, the DEC determined that, because of a material change in petitioner's operation, it would treat petitioner's renewal application as a new application, subject to the requirements of the State Environmental Quality Review Act (SEQRA) (ECL art 8). Petitioner commenced the instant CPLR article 78 proceeding to challenge the authority of the DEC to treat petitioner's application as a new application. Supreme Court granted the petition. We affirm.

The Uniform Procedures Act (UPA) (ECL 70-0101 *et seq.),* which applies to mining permits *(see,* ECL 70-0107 [3] [i]), provides that the holder of an existing mining permit may make a written request for its renewal (ECL 70-0115 [2]; 6 NYCRR 621.1 [s]). An application for the renewal of a permit should generally be granted "without unduly burdening the applicant" *(Matter of Atlantic Cement Co. v Williams,* 129 AD2d 84, 88). As the court noted, that policy best implements the intent of the Legislature, as expressed in the MLRL, to "foster and encourage the development of an economically sound and stable mining and minerals industry" (ECL 23-2703 [former (1)]).

The UPA provides, however, that if a renewal application involves a "material change in permit conditions", the DEC may treat the application as one for a new permit (ECL 70-0115 [2] [a], [b]). The DEC argues that petitioner's latest application involved material changes in its operation sufficient to allow the DEC to treat the application as a new one. We disagree.

■ The DEC contends that petitioner's application included the expansion of mining activities into additional acres of land. The record reveals that petitioner withdrew the request to add additional acreage to its quarry in relation to· its renewal application. Consequently, the area of petitioner's operation at the time of its most recent application was essentially the same area involved at the time petitioner's mining permit was last renewed in 1987.

■ The DEC further argues that petitioner has changed the level of its operation by adding machinery and equipment, changing the placement of its equipment, and expanding quarrying activities on the site. The DEC, however, approved petitioner's prior permit applications with the express provision that "no restriction will be placed on any other regular quarry traffic or operation." The record supports petitioner's argument that the nature of mining itself requires some flexibility in the use and placement of equipment, as well as the height and breadth of stockpiles and the configuration of haulageways. Moreover, the expansion of mining activity into different areas is consistent with the nature of mining and does not constitute a significant change in permit conditions *(see, Matter of Atlantic Cement Co. v Williams, supra,* at 92; *cf., Matter of Guptill Holding Corp. v Williams,* 140 AD2d 12, *appeal dismissed* 73 NY2d 820).

■ The DEC also argues that petitioner's failure to obtain permits for various air emission sources constitutes a material change in permit conditions. It is apparent from the record, however, that most of these sources existed on petitioner's site when the DEC inspected petitioner's operation and approved petitioner's prior renewal applications and that the DEC was aware of their use. The Onondaga County Health Department had the responsibility for issuing air permits from 1973 to 1987 and did not require permits for most of those sources. However, the DEC began to require permits for those sources when it took over the air permit program in 1987. A county engineer stated in an affidavit that petitioner always complied fully with all air permit requirements during the county's administration of the program. When petitioner was informed that the DEC required additional permits, it submitted applications for such permits, but the DEC would not act upon those permit applications until the present matter involving petitioner's application for a renewal permit was resolved. The DEC's determination to require permits for items that did not previously require permits, many of which were already in use at petitioner's site and of which the DEC was aware, does not constitute a material change in permit conditions.

Further, because petitioner demonstrated that it had obtained all required permits and renewals from the Department of Health and had submitted all required air permit applications to the DEC, Supreme Court properly dismissed the DEC's counterclaims seeking civil penalties and injunctive relief.

■ We agree with Supreme Court that the DEC could not require petitioner to comply with SEQRA as a condition to the renewal of its mining permit. Petitioner's quarry is an action "undertaken or approved prior to the effective date" of SEQRA; consequently, it falls within the grandfather clause (ECL 8-0111 [5] [a]; see, Matter of Atlantic Cement Co. v Williams, supra).

The Court of Appeals has held that, in certain circumstances, "there might be proof of change in the level of operation so substantial as to be sufficient to remove an activity from the exclusion clause of ECL 8-0111 (subd 5, par [a]), notwithstanding that the basic nature of the activity remains unchanged" (Matter of Salmon v Flacke, 61 NY2d 798, 800). This is not such a case. It is particularly significant that when the DEC approved petitioner's prior applications, amendments, and renewals, including petitioner's applications

to mine limestone on the site, it issued negative declarations concerning the effect of petitioner's activities on the environment. Because petitioner's latest renewal application did not contain material changes, it was irrational for the DEC to issue a positive declaration in relation to that application.

Finally, the DEC argues that Supreme Court erred by directing it to issue a renewal of petitioner's permit because petitioner did not establish a "clear right to the relief sought" *(Matter of Atlantic Cement Co. v Williams, supra,* at 92). Here, however, the record does not reveal any unresolved matters over which the DEC may exercise its discretion. Consequently, Supreme Court did not err by ordering the DEC to issue a renewal of petitioner's mining permit *(see, Matter of Concrete Materials v Flacke,* 93 AD2d 1002, *lv denied* 59 NY2d 607).

Accordingly, the judgment of Supreme Court should be affirmed.

DENMAN, P. J., BALIO, BOEHM and FALLON, JJ., concur.

Judgment unanimously affirmed, with costs.