OPINION OF THE COURT
Daniel F. Luciano, J.
This motion by the defendants Richard Dranitzke and James J. Finnerty for "[a]n order assessing costs and/or sanctions against plaintiffs counsel, pursuant to Section 8303-a of the CPLR and Section 130.1 and 130.2 of the Uniform Rules for the New York State Trial Courts in the amount of $10,000” is granted to the extent that costs are awarded in the amount of $2,500 to defense counsel Furey, Furey, Lapping, Keller, O’Reilly & Watson, P. C., payable by Fuchsberg & Fuchsberg, Esqs., counsel for the plaintiff John H. Forstman. Pursuant to section 130-1.2 of the Uniform Rules for Trial Courts (now codified in Rules of Chief Administrator of Courts part 130) (22 NYCRR) counsel for the defendants Richard Dranitzke and James J. Finnerty may enter this award of costs as a judgment.
In this medical malpractice action the defendants Richard Dranitzke and James J. Finnerty have moved for "[a]n order assessing costs and/or sanctions against plaintiffs counsel, pursuant to Section 8303-a of the CPLR and Section 130.1 and 130.2 of the Uniform Rules for the New York State Trial Courts in the amount of $10,000”.
This action arose out of the alleged failure to diagnose hyperthyroidism suffered by the plaintiffs decedent Gloria Forstman. That untreated condition, plus the administration of the drug Premarin apparently led to blood clotting which ultimately required the amputation of the decedent Gloria Forstman’s legs.
The physician under whose continuing care the decedent Gloria Forstman had been was the defendant Stephen B. Arluck.
Although the case was settled against the defendants Stephen B. Arluck, South Brookhaven Health Center and Brook-haven Memorial Hospital, and voluntarily discontinued against the defendants Richard Dranitzke and James J. Finnerty and, thus, the issue never determined at trial, for purposes of this motion it will be assumed consistent with the parties’ apparent assumption that it was the failure to prop *931 erly diagnose and treat the decedent Gloria Forstman’s thyroid disease, which was the cause of the injuries and suffering of the decedent Gloria Forstman, for which compensation was sought by this action.
The defendant Richard Dranitzke did not become involved in the treatment of the decedent Gloria Forstman until after she was admitted into the defendant Brookhaven Memorial Hospital on March 29, 1976. On March 30, 1976, he performed an embolectomy on her right leg. On March 31, 1976, he performed a right femoral thrombectomy and operative arteriogram. On April 6, 1976, he amputated the decedent Gloria Forstman’s right leg. He also examined the decedent Gloria Forstman’s left leg and on April 8, 1976, performed an arteriogram on the left leg, which was amputated subsequent to her transfer to New York University Hospital on April 9, 1976.
Significantly, neither the record before or after trial supports the conclusion that the defendant Richard Dranitzke was the physician who had ordered the thyroid test which was ordered during the plaintiff’s decedent Gloria Forstman’s stay at Brookhaven Memorial Hospital but which was not concluded due to an insufficient quantity of blood sample.
With respect to the defendant James J. Finnerty, his involvement with the treatment of the decedent Gloria Forstman appears to be accurately summarized in the affirmation of counsel submitted in support of this motion in paragraph 18: "dr. finnerty’s involvement in this lawsuit consisted of the performance of a bronchoscopy on February 5, 1976, more than one and one-half months before the plaintiff developed problems with respect to her legs, which formed the basis of the lawsuit. His only other involvement in this suit concerned his covering for dr. dranitzke on April 3, 1976 and his assistance at the amputation performed by this latter physician on April 6.”
None of the claims in this action are based upon any alleged malpractice in the surgical care provided to the plaintiff’s decedent Gloria Forstman.
It is asserted by this motion that the continuation of this action against the defendants Richard Dranitzke and James J. Finnerty, after settlement of the action against the defendants Stephen B. Arluck, South Brookhaven Health Center and Brookhaven Memorial Hospital, constituted frivolous conduct.
Based upon the facts and circumstances established herein the court is constrained to conclude that the plaintiff John H. *932 Forstman’s attorney should be sanctioned for engaging in frivolous conduct.
Before further discussion it should be observed that although the defendants Richard Dranitzke and James J. Finnerty have sought the imposition of sanctions pursuant to both CPLR 8303-a and part 130 of the Uniform Rules for Trial Courts (22 NYCRR), the court concludes that only the said Uniform Rules for Trial Courts provisions are applicable herein. Pursuant to Laws of 1985 (ch 294, § 25), CPLR 8303-a applies only to any action for dental or medical malpractice commenced after July 1, 1985. This action preceded that date.
Part 130 of the Uniform Rules for Trial Courts (22 NYCRR), in contrast, applies to acts occurring on or after its effective date, January 1, 1989. (Frerks v Iandoli, 147 AD2d 672.) Since the action against Dr. Stephen Arluck was settled on January 19, 1989, and it is the continuation of the action against the defendants Richard Dranitzke and James J. Finnerty after such settlement which is the complained of conduct, part 130 of the Uniform Rules for Trial Courts (22 NYCRR) is applicable with respect to the timing of the events. Substantively, part 130 of the Uniform Rules for Trial Courts (22 NYCRR) is applicable pursuant to section 130-1.5 thereof which provides: "This rule shall not apply to requests for costs or attorneys’ fees subject to the provisions of CPLR 8303-a.” Since CPLR 8303-a does not apply herein,- part 130 of the Uniform Rules for Trial Courts (22 NYCRR) does apply.
It should also be noted that in concluding that counsel for the plaintiff John H. Forstman has engaged in frivolous conduct within the meaning of part 130 of the Uniform Rules for Trial Courts (22 NYCRR), the court in no way intends to minimize the tragedy which befell the decedent Gloria Forstman or to imply that the prosecution of this action was per se "frivolous” in its entirety within the common meaning of that word.
"Frivolous conduct” in the context of this application for sanctions is specifically defined in section 130-1.1 (c) of the Uniform Rules for Trial Courts (22 NYCRR). That section provides:
"For purposes of this Part, conduct is frivolous if:
"(1) it is completely without merit in law or fact and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; or
"(2) it is undertaken primarily to delay or prolong the *933 resolution of the litigation, or to harass or maliciously injure another.” (Uniform Rules for Trial Cts, 22 NYCRR 130-1.1 [c] [1], [2].)
With respect to the defendants Richard Dranitzke and James J. Finnerty, the court is constrained to conclude that continuation of this action after the completion of disclosure and the resulting establishment of the factual basis for the prosecution of the action was conduct "without merit in law or fact” and no argument has been offered that liability on the discovered facts could be supported "by a reasonable argument for an extension, modification or reversal of existing law”. (Uniform Rules for Trial Cts, 22 NYCRR 130-1.1 [c] [1].)
In resisting the assertion that the continuation of the action against the defendants Richard Dranitzke and James J. Finnerty was frivolous conduct, counsel for the plaintiff John H. Forstman refers to the medical report of Louis J. Vorhaus, II, M.D., dated June 23, 1981, and the medical report of Eugene M. Cooper, M.D., dated December 20, 1982, as establishing a basis for the conclusion that a factual ground existed for the claims against the defendants Richard Dranitzke and James J. Finnerty.
Although neither medical report mentions either the defendants Richard Dranitzke or James J. Finnerty by name, counsel for the plaintiff John H. Forstman seeks to rely upon portions of Dr. Vorhaus’ report which indicated that upon her admission to Brookhaven Memorial Hospital on March 29, 1976, the decedent Gloria Forstman displayed signs and symptoms clearly indicating that she was suffering from thyroidtoxicosis and that there was a departure from accepted standards of practice by the physicians at Brookhaven Memorial Hospital in failing to suspect and confirm that the problem underlying the decedent Gloria Forstman’s condition was thyroid disease.
Since the defendants Richard Dranitzke and James J. Finnerty were among the physicians at Brookhaven Memorial Hospital who rendered treatment and care, to the decedent Gloria Forstman at Brookhaven Memorial Hospital, it seems reasonable to have concluded at the outset of this action that the defendants Richard Dranitzke and James J. Finnerty were properly includable among the defendants in the action as those who breached a duty to the decedent. It may even be conceded that from a layman’s point of view it might seem that these physicians, having undertaken to provide any *934 aspect of the care and treatment of the decedent Gloria Forstman could reasonably be held chargeable with the responsibility for diagnosing the thyroid disease suffered by the decedent Gloria Forstman if the signs and symptoms were, in fact, as obvious and classic as the reports of Dr. Vorhaus and Dr. Cooper suggest.
Despite these conclusions, however, it remains that under the applicable facts and law, after the completion of pretrial disclosure, including the examination before trial of the defendant Richard Dranitzke, subsequent to the preparation of Dr. Vorhaus’ June 23, 1981 report and after the refusal of the defendants Richard Dranitzke and James J. Finnerty to participate in a settlement agreement when the action was settled against the defendants Dr. Stephen B. Arluck, South Brookhaven Health Center and Brookhaven Memorial Hospital, there existed no apparent basis for the prosecution of the action against these defendants.
A closer examination of the facts reveals the reason for this determination.
As noted above, neither of the relied upon medical reports mention either the defendant Richard Dranitzke or the defendant James J. Finnerty. It appears that between these two physicians the care and treatment provided by the defendant Richard Dranitzke to the decedent Gloria Forstman was of a much greater extent than that provided by the defendant James J. Finnerty.
The defendant Richard Dranitzke treated the decedent Gloria Forstman as a surgeon who initially carried out procedures to remove blood clots from the decedent’s right leg and who ultimately performed the amputation of the right leg. This action is not predicated on any surgical errors or mismanagement of the case by the defendant Richard Dranitzke with respect to the surgery.
At his examination before trial on March 31, 1982, the defendant Richard Dranitzke was not asked whether he had undertaken to diagnose and treat the underlying cause of the blood clotting suffered by the decedent Gloria Forstman, nor was any testimony elicited from him indicating that this was encompassed in his duty to the decedent Gloria Forstman as her surgeon.
The limitation of his duty may have been suggested by the following portion of the examination before trial:
"Q Were you aware when you were treating Mrs. Forstman that she was manifesting heart irregularities?
*935 "A I was.
"Q Were you treating that condition at all?
"mr. toto: Heart condition?
"Q Heart irregularities she was manifesting.
"A I would have to go through all the orders to see who was writing them up, but I think basically her cardiac status would have been treated by the medical people. I may have written some orders, but they were the ones basically in charge.”
Further, in reference to the defendant Richard Dranitzke’s note of a "workup to determine if there is an underlying disease in progress” the following transpired:
"Q Doctor, in your note of 9:45 P.M. on April 7, you indicated that a workup was being performed to determine the underlying cause of the problems with the left leg.
"What did the workup consist of? * * *
"A Is the question what workup were we doing to determine the underlying disease for her left leg?
"She had a coagulation evaluation. Tests to determine if she had malignancy. Tests to determine if she had autoimmune diseases.
"These are the major areas of evaluation at that time.
"Q What were the findings in these tests?
"A Which tests are you referring to?
"Q The coagulation evaluation. By findings, I mean were they normal? Were they abnormal?
"A I am not a hematologist, and do not claim to be one. And that workup was undertaken in part by Dr. Magnuson, hematologist.”
Significantly, the proof required to establish liability in a medical malpractice case differs from the proof required to prove a case of ordinary negligence. "Generally, expert testimony is necessary to prove a deviation from accepted standards of medical care unless the matter is one which is within the experience and observation of the ordinary juror (see, e.g., McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20, 26; Meiselman v Crown Hgts. Hosp., 285 NY 389). This is so because without expert assistance a jury will often have no understanding of what constitutes reasonable behavior in a complex and technical profession such as medicine.” (Paul v Boschenstein, 105 AD2d 248, 249.)
*936 Thus, facts and circumstances which may, to one unschooled in the medical profession, appear to constitute a breach of duty or malpractice on the part of a physician, may involve conduct which is well within the accepted standards of care by the physician in question.
This matter provides a clear example of the need for expert testimony to establish medical malpractice liability.
The plaintiff John H. Forstman has suggested a scenario in which the decedent displayed allegedly clear signs and symptoms suggesting a hyperthyroid condition which were easily discernible, coupled with the fact that the defendant Richard Dranitzke, who had been engaged as a surgeon on behalf of the decedent Gloria Forstman, failed to diagnose her thyroid disease. Without the requirement of expert medical testimony these facts alone might be sufficient to persuade a jury that the defendant Richard Dranitzke had committed malpractice by failing to diagnose the thyroid disease suffered by the decedent Gloria Forstman.*
Aside from the questions of whether the signs and symptoms were as easily discernible as suggested by the plaintiff John H. Forstman prior to the decedent Gloria Forstman’s transfer to New York University Medical Center from Brook-haven Memorial Hospital and whether the diagnosis of thyroid disease was as obvious as suggested by the plaintiff John H. Forstman, questions upon which the plaintiff offers speculation but upon which he offered no proof at trial, a fundamen *937 tal question, requiring proof by a medical expert, is whether the duty to diagnose the underlying cause of the condition which the defendant Richard Dranitzke was engaged to treat was within the scope of his duty to the decedent Gloria Forstman.
The record reflects that while in Brookhaven Memorial Hospital the decedent Gloria Forstman came under the care of a series of physicians with different areas of specialization. Only the testimony of expert medical witnesses in this situation could define the scope of the duty of the defendant Richard Dranitzke owed to the decedent Gloria Forstman.
Accordingly, it was not proper conduct in this medical malpractice action for counsel for the plaintiff John H. Forstman to continue with the prosecution of this action against the defendant Richard Dranitzke, without having accumulated through pretrial disclosure sufficient facts on which to predicate a malpractice cause of action against the defendant Richard Dranitzke and without having secured a qualified medical expert’s opinion that the facts so accumulated, even if subject to dispute, were sufficient to present a prima facie case of medical malpractice.
The examination before trial of the defendant Richard Dranitzke provided no factual predicate for a malpractice cause of action against him.
In opposition to this motion for sanctions a new affidavit of Eugene M. Cooper, M.D., has been provided. Therein he states, in part: "I concurred with the findings and opinion of Dr. Vorhaus that the failures of Drs. Dranitzke and Finnerty to make greater effort to determine the underlying reason for the continued occlusion of Mrs. Forstman’s lower extremities did not meet with what I considered good practice. That opinion, which I gave to Mr. Goldstein, was contingent however with the responsibility of Dr. Dranitzke and his associate, Dr. Finnerty, to go outside of their specialty as surgeons under the extreme circumstances in order to determine the basis of Mrs. Forstman’s disability.” (Emphasis added.)
Thus, Dr. Eugene M. Cooper’s new affidavit plainly suggests that to the point of trial no factual basis was known to him (and correspondingly to counsel for the plaintiff John H. Forstman) for imposing liability on the defendant Richard Dranitzke, since a finding of liability, in his opinion, would be conditioned on a state of facts not known or reasonably believed to exist.
*938 Nevertheless, it appears that counsel for the plaintiff John H. Forstman employed a strategy of proceeding to trial and the examination at trial of the defendant Richard Dranitzke in the hope that he would provide some previously undiscerned evidentiary predicate on which to base a claim that he breached a duty owing to the decedent Gloria Forstman.
When the testimony of the defendant Richard Dranitzke failed to provide any new basis for imposing liability, the case against him was voluntarily discontinued.
The court further notes that although the new affidavit of Dr. Eugene M. Cooper is offered to refute the contention that continuation of this action against the defendant Richard Dranitzke was frivolous conduct the affidavit is fraught with inconsistencies which render it unpersuasive in any event. The affidavit reads, in part: "After the description of Dr. Dranitzke’s testimony I explained to Mr. Goldstein that the doctor had successfully limited his liability with respect to the need for further testing and examination of the underlying cause of the problem to that of a spectator rather than as a participant in the ongoing effort to determine what was wrong with Mrs. Forstman, that under the circumstances, while I was still disposed to testify that there had been a deviation of good and proper practice in failing to speak to Dr. Arluck, in failing to obtain Dr. Arluck’s records and to complete the tests for hypertyroidism [sic] (Graves Disease).”
Later in his affidavit Dr. Eugene M. Cooper states: "Based upon Mr. Goldstein’s understanding of Dr. Dranitzke’s testimony and the deposition of Dr. Finnerty under the circumstances of the emergency treatment required at that time, it was my final opinion that the deviation from good practice by those doctors was severely limited.”
These inconsistent statements, perhaps without the intention to do so, suggest that Dr. Cooper had concluded that based upon the evidence the defendant Richard Dranitzke had not breached a duty owing to the decedent Gloria Forstman, but that he nevertheless was willing to testify to "a deviation of good and proper practice”. Whatever his intention may have been in that respect, however, it is apparent that Dr. Cooper could identify no firm ground for imposing liability upon the defendant Richard Dranitzke.
It should be emphasized that this was not a case in which a party prosecuting a claim reasonably proceeded to trial based upon a good-faith belief in the reliability of evidence available *939 to such party, only to be surprised at trial by evidence inconsistent with the pretrial theory of liability, such as a recanting of testimony by a crucial witness. In this case pretrial preparation had failed to provide any clearly defined theory of liability with respect to the defendant Richard Dranitzke and it can be concluded that nothing elicited at trial was in the nature of a surprise. If an insufficient picture of what had transpired at Brookhaven Memorial Hospital in March and April 1976 with respect to the care and treatment of the decedent Gloria Forstman had not been established prior to trial it appears such insufficiency was the product of inadequate pretrial preparation. Unavoidable surprise was not the cause.
The discussion above has focused upon the cause of action asserted against the defendant Richard Dranitzke. This motion for sanctions, however, also concerns the cause of action asserted against the defendant James J. Finnerty. Since whatever cause of action may have existed against the defendant James J. Finnerty, an associate of the defendant Richard Dranitzke, who lent some assistance in this case, is in no way any stronger than the case against the defendant Richard Dranitzke, it necessarily follows that the continuation of the action against him was also frivolous conduct within the meaning of part 130 of the Uniform Rules for Trial Courts (22 NYCRR).
Part 130 of the Uniform Rules for Trial Courts (22 NYCRR) authorizes the award of costs or the imposition of sanctions against an attorney or party, or both, upon a finding of frivolous conduct. (Uniform Rules for Trial Cts, 22 NYCRR 130-1.1 [b].) The record presented does not reflect that the plaintiff John H. Forstman should be charged with engaging in frivolous conduct. The circumstances herein which dictate the conclusion that the continuation of the litigation against the defendants Richard Dranitzke and James J. Finnerty was frivolous are of a somewhat technical nature. The plaintiff John H. Forstman has been shown to be neither a medical expert who could determine for himself the duties and obligations, under the circumstances revealed, of the defendants Richard Dranitzke and James J. Finnerty with respect to the decedent Gloria Forstman, nor a legal expert charged with the knowledge of the elements of a prima facie medical malpractice action.
In contrast, counsel is charged with the knowledge of what is necessary to prove a case. Here the conclusion is warranted *940 that counsel allowed this case to proceed to trial against two defendants based on little more than the hope that a trial would provide some basis for imposing liability previously unknown, or that the threat of prosecution would result in some payment in settlement of the outstanding claims. Thus, it is the law firm of Fuchsberg & Fuchsberg, Esqs., counsel for the plaintiff John H. Forstman, which bears the responsibility of paying the costs or sanctions to be imposed.
The rule provides that the court may award costs to any party or attorney "in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney’s fees * * *. In addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney”. (Uniform Rules for Trial Cts, 22 NYCRR 130-1.1 [a].)
In this case, since the frivolous conduct of counsel for the plaintiff John H. Forstman led directly to additional inconvenience and expenses on the part of defense counsel and the defendants Richard Dranitzke and James J. Finnerty, the court concludes that an award of costs rather than the imposition of financial sanctions is the more appropriate relief.
In the affirmation in support of this motion defense counsel indicates that he "has totaled the number of hours spent on preparation of the defense of this lawsuit, specifically since January 19, 1989, when this matter was discontinued against Dr. Arluck, and plaintiff’s counsel specifically opted for continuance of this matter against drs. dranitzke and finnerty.” It is then indicated that subsequent to the settlement with the other defendants counsel devoted over 100 hours to this case, including three days of jury selection, conferences with the defendants Richard Dranitzke and James J. Finnerty, and research and review of records in addition to five days of trial. Other expenses are alleged but only the cost of the transcript of the defendant Richard Dranitzke’s trial testimony, which totaled $1,507.50, is alleged with specificity.
With respect to the defendants Richard Dranitzke and James J. Finnerty, the submitted papers fail to establish "actual expenses incurred” for which they could be compensated pursuant to section 130-1.1 (a) of the Uniform Rules for Trial Courts (22 NYCRR). The moving affirmation states only that "it is requested that the court take notice of the fact that subpoenas were served upon both of these physicians subsequent to this date, causing great inconvenience with their *941 schedules, as well as the normal anxiety associated with an appearance in any form of lawsuit, particularly a medical malpractice action alleging incompetence in their professional capacities.”
These items as to which the court is requested to take notice, however, do not present items for which costs are adequately established for reimbursement pursuant to part 130 of the Uniform Rules for Trial Courts (22 NYCRR).
Although the award of costs may be up to $10,000 (Uniform Rules for Trial Cts, 22 NYCRR 130-1.2) based upon all the facts and circumstances herein, including the fact that there did exist an apparently meritorious cause of action on behalf of the plaintiff, John H. Forstman (albeit not against these defendants), the fact that the record may reasonably support the conclusion that the "frivolous conduct” herein was the consequence of bad judgment, and does not necessarily compel the conclusion that the action was continued in bad faith solely to harass or maliciously injure a party (see, Uniform Rules for Trial Cts, 22 NYCRR 130-1.1 [c] [2]) and that the causes of action were voluntarily discontinued (if belatedly), the court concludes that costs should be assessed against the law firm of Fuchsberg & Fuchsberg, Esqs., counsel for the plaintiff John H. Forstman, in favor of defense counsel, Furey, Furey, Lapping, Keller, O’Reilly & Watson, P. C., in the amount of $2,500.

 With respect to the issue of whether the defendant Richard Dranitzke did fail to recognize obvious symptoms of a hyperthyroid condition it is noted that his examination before trial included the following:
"Q Did you at any time during the time she was admitted to Brookhaven Memorial Hospital in March and April of '76 examine Mrs. Forstman’s Thyroid?
"A I believe I did.
"Q What were your findings when you examined her?
"A I would assume, because I haven’t written it down. I would assume there were no abnormalities in the thyroid.
"Q Did you notice any exophthalmas at the time Mrs. Forstman was hospitalized? * * *
"A I did not note any exophthalmas.
"Q Did you note any lid lag?
"A I did not note any lid lag. * * *
"A Let me just add onto that. That is all assumption based on the fact that I didn’t comment on it. I don’t specifically recall that at this time, but because I didn’t comment on it. I don’t specifically recall that at this time, but because I didn’t comment on it, I assume I did not note those things.”