■ In the Matter of ELSIE NICKLIN-MCKAY et al., Appellants, v TOWN OF MARLBOROUGH PLANNING BOARD et al., Respondents. [788 NYS2d 448]—

Mugglin, J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered October 9, 2003 in Ulster County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town of Marlborough Planning Board approving a preliminary subdivision plat.

Respondents Joel Truncali and Frances Truncali (hereinafter collectively referred to as respondents) submitted a plan for the subdivision of their property in the Town of Marlborough, Ulster County, to respondent Town of Marlborough Planning Board. In this CPLR article 78 proceeding, petitioners challenge the issuance of a negative declaration of environmental significance issued by the Planning Board. On the return date of the petition, Supreme Court ruled that respondents had not been properly served and were thus not joined as respondents in this proceeding, and the entire proceeding must be dismissed as the statute of limitations had expired. Nevertheless, Supreme Court decided that had the proceeding been properly commenced, it would have to be dismissed for lack of merit.

We first address whether dismissal on statute of limitations grounds was proper. In this regard, respondents' answer pleaded a second affirmative defense and objection in point of law in the following language: "The instant proceeding is time barred by the applicable thirty (30) day statute of limitations as aforesaid above, in that [p]etitioners have failed to obtain *in personam* jurisdiction over the [r]espondents Joel Truncali and Frances E. Truncali under CPLR 308 (4) prior to the expiration of the applicable statute of limitations under [the State Environmental Quality Review Act], CPLR 306-b and [Town Law] § 282 . . . and the proceeding must fail for a failure to timely join [r]espondents as necessary parties pursuant to CPLR 1001 (a)." Liberally construed, three affirmative defenses can be discerned from this language, statute of limitations, lack of in personam jurisdiction due to improper service of process and nonjoinder of necessary parties. The statute of limitations defense has no merit as respondents admit in their answer that petitioners timely commenced this proceeding by the filing of a notice of petition and petition in the Ulster County Clerk's office within the 30-day statute of limitations found in Town Law § 282. Also, the nonjoinder of a necessary party argument is misplaced. Both Joel Truncali and Frances Truncali are named as respondents in the caption of the notice of petition and petition and their interest in this proceeding is detailed in the body of the petition. Moreover, they readily admit that they are the owners of the property and that Joel Truncali is the applicant seeking subdivision approval. Clearly, they were joined as respondents.

The real issue is respondents' claim that petitioners had until March 22, 2002 to serve them and that they failed to make proper service on both under the "nail and mail" provisions of CPLR 308 (4). The basis for this claim is that petitioners' process server affixed only one copy of the papers to the front door

of the residence and mailed an additional copy in an envelope addressed to respondents, thereafter mailing a second copy of the papers to only Joel Truncali. It appears from the affidavit of service that these mailings occurred within the time limits allowed by the statute. Nevertheless, apparently concerned that respondents had not both been properly served, petitioners' process server returned to respondents' residence several days thereafter, affixed another copy of the pleadings to the front door addressed to Frances Truncali and mailed another set of papers to her.

As Supreme Court correctly noted, to effect service upon persons who are husband and wife and who reside together, each person must be served (*see McCormack v Gomez*, 137 AD2d 504, 505 [1988]). Nevertheless, in his supporting affidavit, Joel Truncali acknowledges that he received the first posted set of papers and the subsequent mailing, making service upon him valid (*see id.* at 506). Under these circumstances, Supreme Court should have proceeded pursuant to the provisions of CPLR 306-b which, where service is untimely (in this proceeding the limit is 15 days), permits the court, upon motion, to either dismiss the proceeding without prejudice to that respondent or, upon good cause shown or in the interest of justice, extend the time for service. While motions in special proceedings are permissible, "the profusion of motion practice seen in actions has no counterpart in special proceedings for the very reason that the proceeding itself is analogous to a motion and is designed to go to hearing and determination promptly" (Siegel, NY Prac § 554, at 913 [3d ed]). As Supreme Court erroneously decided that dismissal was necessary for failure to join a necessary party, we could remit so that Supreme Court could exercise its discretion with respect to extending the time for service. In the interest of judicial economy, however, we will exercise our discretion and hold that service on Frances Truncali under CPLR 308 (4) was valid nunc pro tunc as of March 22, 2002, resulting in the court having in personam jurisdiction over her as well as her husband. The basis for doing so is found in the court already having in personam jurisdiction over Joel Truncali, Frances Truncali's interest being completely united with Joel Truncali in this proceeding, both of them having complete knowledge as to the issues involved and because there is no discernible prejudice to any party by so ruling. Thus, Supreme Court erred in dismissing the petition on this basis and we therefore reach the merits.

Petitioners contend that various procedural and substantive errors of the Planning Board concerning the requirements of the State Environmental Quality Review Act (*see* ECL art 8

[hereinafter SEQRA]) require that the negative declaration be annulled. According to petitioners, the Planning Board's procedural mistakes are (1) its failure to timely issue its determination, (2) its failure to automatically issue a positive determination due to an inaccuracy in the applicants' environmental assessment form concerning the number of forested acres to be impacted by construction of the subdivision, and (3) its failure to automatically issue a positive declaration upon the identification of six potentially large impacts on the environment. We find each of these contentions unpersuasive. First, although the negative declaration was issued 853 days after submission of the application, no time limitation imposed by SEQRA has been violated. As a general proposition, the lead agency is required to determine the environmental significance of a proposed project within 20 days of its establishment as the lead agency or within 20 days after the receipt of all information reasonably necessary to render a determination (*see* 6 NYCRR 617.6 [b] [3] [ii]). However, this time limitation is directory only (*see Matter of Seaboard Contr. & Material v Department of Envtl. Conservation of State of N.Y.*, 132 AD2d 105, 108 [1987]). In our view, the Planning Board, as the lead agency, painstakingly undertook to gather substantial data regarding the application, holding both public meetings and hearings in order to receive and consider evidence from all interested parties. Following the expiration of the deadline for submissions, the Planning Board issued the negative declaration at its next regularly scheduled meeting. Thus, we conclude that the declaration was not untimely.

Next, examination of the environmental assessment form submitted by respondents reveals that seven tenths of an acre of forest and 18.3 acres of trees, shrubs and ground cover would be cleared in conjunction with the subdivision. Although petitioners' expert claimed that 10 acres of forest would be removed, thereby creating the alleged inaccuracy in the environmental assessment form, his opinion failed to take into account the amount of trees, shrubs and ground cover that would also be removed. Accordingly, we reject any notion that the environmental assessment form submitted by respondents was inaccurate in this regard. Further, we reject petitioners' assertion that simply because six potentially large impacts on the environment were identified, SEQRA requires the automatic issuance of a positive declaration. Potentially large impacts are not the equivalent of significant impacts. Identification of a potentially large impact simply requires the lead agency to conduct a further evaluation to determine whether the impact would be significant (*see* 6 NYCRR 617.20). Since the record reflects that the Planning Board undertook the requisite evalu-

ation of the identified potentially large impacts on the environment, we conclude that it followed the procedural framework of SEQRA in this regard (*see Matter of Merson v McNally*, 90 NY2d 742, 751 [1997]).

Petitioner also makes three arguments that the Planning Board failed to follow the substantive requirements of SEQRA in that it (1) did not take the requisite "hard look" at the impact that storm water and flooding would have on the proposed project, (2) ignored the Town's comprehensive management plan which discourages development along ridge lines, and (3) overlooked a violation of the limitation in the Town Code on the length of dead-end streets. After carefully examining the record, we find no basis upon which to disturb the Planning Board's determinations (*see Matter of Rafferty v Town of Colonie*, 300 AD2d 719, 722 [2002]).

With respect to the issue of storm water and flooding, the Planning Board received the opinions and findings of three engineers and conducted a public hearing addressed to these concerns. With respect to the Town's comprehensive plan, the Town Code simply requires the Planning Board to consider its provisions when reviewing subdivision applications. As the Town's comprehensive plan had not been incorporated into the Town's zoning ordinance, the zoning ordinance is the best evidence of the Town's land use policy (*see Matter of McGrath v Town Bd. of Town of N. Greenbush*, 254 AD2d 614, 618 [1998], *lv denied* 93 NY2d 803 [1999]). Moreover, the comprehensive master plan discourages, but does not prohibit, residential development on ridge lines. The Planning Board carefully examined this concern and provided a reasoned elaboration for its ultimate conclusion that the proposed subdivision would not have a significant impact upon the aesthetic value of adjacent undeveloped areas.

Next, petitioner argues that the Planning Board violated SEQRA by failing to determine that the roadway(s) shown on the subdivision plat violated the Town Code provisions with respect to the permitted length of dead-end streets. Section 134-16 (E) of the Town's subdivision regulations provides that "permanent dead-end streets shall not exceed 2,000 feet in length, measured from the intersection with the centerline of the connecting public road, in order to provide for convenience of traffic movement and facilitate more effective police and fire protection." Under the proposed subdivision plan, the first 1,791 feet are designated as public and the remaining 1,700 as private, ending in a cul-de-sac. Thus, as submitted, there is literal compliance with the subdivision regulations since neither the

public road nor the private road from the terminus of the public road exceeds 2,000 feet. To the extent that the town subdivision regulations are ambiguous as to whether they apply to this fact pattern, those regulations are strictly construed against the municipality and in favor of the property owner (*see Matter of Bonded Concrete v Zoning Bd. of Appeals of Town of Saugerties,* 268 AD2d 771, 774 [2000], *lv denied* 94 NY2d 764 [2000]). More importantly, the Planning Board's SEQRA inquiry on this issue is one of public safety and the record amply demonstrates that the Planning Board took the required hard look at those issues and detailed the mitigating measures implemented by the applicant for safety on these roadways, thus fulfilling its responsibilities.

As a final matter, petitioners argue that the Planning Board failed to exercise independent judgment as the lead agency in reviewing the proposal. Since the record reveals without dispute that once the Planning Board became the lead agency, it proceeded with extraordinary diligence in gathering information relevant to the proposal, receiving all manner of evidence and public comment through a series of public hearings and meetings, there is simply no factual support for this allegation. The Planning Board undertook each and every duty required of a lead agency in reviewing the subdivision application and reached an independent, rational conclusion upon all of the evidence before it (*see Matter of Heritage Co. of Massena v Belanger,* 191 AD2d 790, 792 [1993]).

Peters, J.P., Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.