Matter of Farley (Doe) (2024 NY Slip Op 24117)

[*1]

Matter of Farley (Doe)

2024 NY Slip Op 24117

Decided on April 11, 2024

Supreme Court, Monroe County

Ciaccio, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 11, 2024
Supreme Court, Monroe County

In the Matter of the Application of Christopher J. Farley, Petitioner, 
 for the Appointment of a Guardian for Jane Doe, Respondent, an Alleged Incapacitated Person.

Index No. E2023001540

DUTCHER & ZATKOWSKY, Rochester, New York (Miles P. Zatkowsky, Esq. and Yolanda Rios, Esq.) for Petitioner Christopher J. Farley
AARON M. GAVENDA, ESQ., Rochester, New York, VIVEK J. THIAGARAJAN, ESQ., Webster, New York; and JANE FARLEY, ESQ., Laurelton, New York for Cross-Petitioner Jonathan Farley

Christopher S. Ciaccio, J.

In this highly contentious Article 81 proceeding, brothers Christopher Farley and Jonathan Farley have each petitioned to be guardian Jane Doe, an alleged incapacitated person. Before the court is consideration of whether to impose sanctions on Jonathan Farley for filing frivolous motions and proceedings. Also to be considered is whether to order him to pay the attorney fees incurred by Christopher Farley in opposing the motions.
The proceedings for consideration are as follows: 1) the issuance of a subpoena for the bank records of the AIP Jane Doe, 2) a letter that accompanied the subpoena that requested as well the bank records of Christopher Farley, 3) motion seeking a) removal of the Temporary Guardian Christopher Farley, who had been appointed by the court in March 2023, b) the return of the AIP to her former residence; c) dismissal of the Petition for failure to properly serve [*2]Jonathan Farley, and d) appointment of a third-party, non-family temporary guardian, and e) a fee award.
After commencement of the guardianship proceeding, and after some initial jockeying, the court issued a Day Certain Order, setting the trial date of as July 10, 2024. The Order directed that notice of any forthcoming pre-trial in limine motions be provided seven days before trial and that the motions be filed at least four days prior to trial.
On July 7, 2023, Vivek Thiagarajan, Esq. filed a Notice of Appearance as co-counsel for Jonathan.
On the day of trial Jonathan, by his attorneys, and on behalf of Jane Doe, requested that the trial take place in Jane Doe's presence at her nursing home, even though the parties had previously stipulated that Jane Doe would appear virtually from her nursing home. The trial was adjourned.
On or about July 11, 2023, Christopher received a letter from JPMorgan Chase Bank ("Chase") that it had been served with a subpoena, issued from Mr. Gavenda's office, seeking information concerning his financial information. His attorney, Miles Zatkowsky, requested of Aaron Gavenda, counsel for Jonathan, a copy of the subpoena. When it did not come, Mr. Zatkowsky sent an e-mail to Mr. Gavenda, on notice to all counsel and the Court Evaluator, requesting the immediate withdrawal of the subpoena pursuant to CPLR 2304 (see NYSCEF # 67), and then moved by Order to Show Cause to quash the subpoena.
In his response to the motion to quash, Mr. Gavenda admitted that he had "authorized" a "Subpoena Duces Tecum" for financial records relative to Jane Doe, because, he felt, "with further investigation into Respondent's accounts, we can figure out what exactly the respondent's assets are at this time as we have been shown conflicting information about the Respondent's resources."
Mr. Gavenda' s letter accompanying the subpoena stated that he was also requesting information regarding any accounts held in the name of Christopher Farley.
Mr. Gavenda, in open court at oral argument, admitted to not providing notice to Mr. Zatkowsky and also including a request for Christopher Farley's financial information. He attributed these errors to clerical mistakes, but also admitted that he included Christopher Farley's name in the cover letter because "there may be a joint account between Jane Doe and Christoper J. Farley," and because "the Petitioner (Christopher J. Fairly) has been acting as the Power of Attorney since at least 2017." Thus, he admitted, his client should have "access to the documentation requested" as this is a proceeding to "determine whether the Temporary Guardian has done his due diligence on behalf of the Respondent . . . ."
On July 21, 2023, Jonathan filed the motion (motion # 6) for removal of Christopher as Temporary Guardian. 
All counsel appeared on July 31, 2023, for oral argument on both motions. The motion to quash was granted, on the grounds that proper notice of the subpoena as required by CPLR 3120 was not given to counsel, and the materials sought were not relevant to the proceeding and were beyond the scope of allowable discovery under Article 81. 
The motion to remove the Temporary Guardian and other relief was deemed to be frivolous and denied in its entirety.
The court scheduled a hearing to determine whether costs should be awarded to Christopher or his attorneys and whether financial sanctions should be imposed upon Jonathan or his attorneys pursuant to 22 NYCRR 130-1.1. Counsel for Christopher and Jonathan appeared [*3]and presented their respective arguments. Post-hearing submissions were filed on behalf of both parties, but a request for a specific attorney's fee and disbursement award with supporting documentation was not made on behalf of Christopher or his counsel.
Following the sanctions hearing, the Court issued an Amended Day Certain Non-Jury Trial Order directing that opening statements and the presentation of proof relative to the Petition and Cross-Petition would commence at the residence of Jane Doe, the Legacy at Cranberry Landing, on December 18, 2023 (NYSCEF # 106).
Discussion
An award of costs or imposition of sanctions resulting from frivolous conduct is governed by 22 NYCRR 130-1.1, which states in part:
(a) The court, in its discretion, may award to any party or attorney in any civil action or proceeding before the court . . . costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part. In addition to or in lieu of awarding costs, the court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part . . . Costs are awarded to the "party or lawyer — who sustained the expense caused by the frivolous conduct." (Siegel & Connors, New York Practice § 414A at 807 [6th ed 2018].)
A "sanction" is "a separate monetary assessment imposed as a punishment for the frivolous conduct . . . best described as a 'punitive' award" (id.). The sanction imposed may not "exceed $10,000 for any single occurrence of frivolous conduct" (22 NYCRR 130-1.2). If the sanction "is assessed against the party, it goes to the clerk for deposit into the public treasury; if it's assessed against the lawyer, it goes to the Lawyers' Fund for Client Protection, the fund set up to recompense the victims of dishonest lawyers" (Siegel & Connors, New York Practice § 414A at 807 [6th ed 2018]; see 22 NYCRR 130-1.3).
"[C]onduct is frivolous if: (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false" (LG 101 Doe v Wos, 216 AD3d 1393, 1395 [4th Dept 2023], quoting Marshall v Marshall, 198 AD3d 1288, 1289-1290 [4th Dept 2021] and 22 NYCRR 130-1.1 [c]).
Factors for the court to consider in determining whether conduct was frivolous include, "among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party" (22 NYCRR 130-1.1 [c]).
DISCUSSION
Motion to Quash
The attempt to use a subpoena duces tecum to conduct discovery was " . . . completely without merit in law" and could not "be supported by a reasonable argument for an extension, modification or reversal of existing law ( 22 NYCRR 130-1.1 [c]).
Mr. Gavenda has admitted that the purpose of the subpoena was not to produce documents needed for trial, which was only days away, but to conduct discovery, i.e., as he [*4]stated, " . . . with further investigation into Respondent's accounts, we can figure out what exactly the respondent's assets are at this time . . . "
"An Article 81 proceeding is a special proceeding" (Matter of Allen, 10 Misc 3d 1072[A], 2005 NY Slip Op 52223[U], *2 [Sup Court, Tompkins County 2005]; see Matter of Bank (B.L.), 72 Misc 3d 619, 623 [Sup Court, New York County 2021]). "In a special proceeding, such as the guardianship proceeding at bar, disclosure is available only by leave of the court in view of the need for a speedy adjudication, since permitting discovery could have the effect of delaying the proceeding" (Matter of Nunziata (Nancy K.), 72 Misc 3d 469, 475 [Sup Ct, Nassau County 2021], citing Matter of Suit-Kote Corp. v Rivera, 137 AD3d 1361 [3d Dept 2016]; CPLR 408; Siegel & Connors, New York Practice, §555 at 1064-1065 [6th ed 2018]; see also Matter of Giuliana M. (DeCarolis), 220 AD3d 864, 866 [2d Dept 2023] ["discovery tends to prolong a case, and therefore is inconsistent with the summary nature of a special proceeding . . ."]; Matter of Aylward v City of Buffalo, 101 AD3d 1743, 1743 [4th Dept 2012] [CPLR 408 "requires a court's leave to obtain formal disclosure beyond a notice to admit"]).
Even if the subpoena was not intended to obtain information about Christopher's bank accounts, it was an improper vehicle for obtaining discovery concerning Jane Doe's accounts. "A subpoena duces tecum may not be used for the purpose of discovery or to ascertain the existence of evidence" (Cataldo v County of Monroe, 38 Misc 2d 768, 770 [Sup Court, Monroe County 1963], affd 19 AD2d 852 [4th Dept 1963], citing Matter of Saratoga Harness Racing Assn. v Monaghan, 9 Misc 2d 868, 872 [Sup Ct, Albany County 1958]; see People v Gissendanner, 48 NY2d 543, 551 [1979]).
CPLR 408 provides a vehicle for conducting discovery during a special proceeding, allowing for a "balance (between the needs of the party seeking discovery against such opposing interests as expediency and confidentiality" (Matter of Giuliana M. [DeCarolis], 220 AD3d 864, 867 [2d Dept 2023], quoting Matter of Bramble v New York City Dept. of Educ., 125 AD3d 856, 857 [2d Dept 2015]). However, Mr. Gavenda chose, perhaps out of ignorance, not to utilize it.
The purpose of the trial, to be held only a few days after the issuance of the subpoena, was to determine whether Jane Doe was in need of a guardian of her person and property and who should serve as guardian. It was not to determine "whether the Temporary Guardian has done due diligence." Thus, discovery seeking Jane Doe's bank records was "utterly irrelevant to any proper inquiry" (Matter of Nunziata v Kosofsky, 71 Misc 3d 1218[A], 2021 NY Slip Op. 50403[U] [Sup Ct, Nassau County 2021]). 
Moreover, the subpoena was not served in accordance with CPLR 2303 (a) or CPLR 3120(3). The cover letter that accompanied the subpoena suggests that a copy was sent to Mr. Zatkowsky, but Mr. Gavenda admitted on the record that it was not.
Likewise, if the subpoena was construed to be a trial subpoena (as argued by Mr. Gavenda) directing the delivery of documents to Mr. Gavenda's office, rather than to the Clerk of the Court, service of the subpoena did not comply with CPLR 2305 (d), which requires that, "a copy of the subpoena shall be served on all parties simultaneously." As noted, a copy of the subpoena was not served on Mr. Zatkowsky (see CPLR 2303-a).
At the sanctions hearing, Mr. Gavenda claimed that he could not provide a copy of the subpoena to Mr. Zatkowsky because it was neither in his possession nor "scanned into" to his "system" "for whatever reason" due to "administrative error." He had no explanation as to why there was no draft of the subpoena in his computer system and claimed that he had to request the [*5]subpoena from Chase in order to provide a copy to counsel.[FN1]

Mr. Gavenda stated during the sanctions hearing, "At the time that Mr. Zatkowsky was emailing me I was not in possession of the subpoena. So, I did not respond other than to say, through my co-counsel Vivek Thagarajan, that if I was to find the subpoena and see that it directed Chase to provide the financial documents of his client, I would then withdraw the subpoena." 
Mr. Gavenda did not explain why he needed to see the subpoena in order to clarify with Chase that the subpoena did not seek documents related to Christopher's accounts. He did not argue that Christopher's banking records were necessary or relevant, and he took action to alert Chase of the alleged inadvertence of including Christopher's name in the cover letter accompanying the subpoena.
Despite Mr. Zatkowsky's efforts to resolve the matter, and the attendant expense incurred for the motion to quash, Mr. Gavenda opposed the motion to quash on its merits (see Divito v Fiandach, 160 AD3d 1404, 1405-1406 [4th Dept 2018]). His persistence in justifying the issuance of the subpoena "was continued when its lack of legal or factual basis was apparent, should have been apparent, and was brought to his attention" (see 22 NYCRR 130-1.1 [c]). 
Issuance of the subpoena and the lack of service, coupled with the subsequent failure to produce a copy of the subpoena or withdraw it upon counsel's request, constitutes frivolous conduct. The circumstances under which the conduct took place demonstrates that the intention of its issuance was to harass Christopher and exhaust his resources, constituting an abuse of subpoena power. "It is well established that a party's abuse of the judicial process is frivolous conduct supporting an award of costs or the imposition of sanctions" (Divito v Fiandach, 160 AD3d 1404, 1405 [4th Dept 2018]; see S.P. v M.P., 207 AD3d 1247, 1247 [4th Dept 2022], rearg denied 208 AD3d 1656 [4th Dept 2022] [abuse of "judicial process by engaging in meritless, frivolous or vexatious litigation"] [citation omitted]).[FN2]

The cost of quashing the subpoena at issue here — which was not properly issued or served — should be borne by Jonathan's counsel (see generally Divito v Fiandach, 160 AD3d at 1406 [it was "self-evident that the cost of vacating an income execution based upon false representations concerning a nonexistent default judgment should be shouldered by the party responsible for preparing and serving it"]; see also Barber v Premo, 74 Misc 3d 1204[A], 2021 NY Slip Op 51291[U], *15 [Sup Ct, Albany County 2021], citing Forstman v Arluck, 149 Misc 2d 929, 939 [Sup Ct, Suffolk County 1991] [conduct deemed frivolous was "of a somewhat [*6]technical nature"]). Here, Christopher is entitled to an award of costs, including reasonable attorney's fees and disbursements, payable by Mr. Gavenda in connection with the motion to quash.
An assessment of sanctions against Mr. Gavenda also is warranted based on his failure to provide a copy of the subpoena to Mr. Zatkowsky or to communicate with Mr. Zatkowsky regarding the scope or propriety of the requested documents, despite Mr. Zatkowsky's efforts to resolve the matter. Mr. Gavenda persisted in arguing that the failure to timely serve the subpoena was the result of law office failure, but he did not explain why the accompanying cover letter stated that the documents sought included Christopher's banking information. His actions, made more egregious by the lack of effort to correct admitted deficiencies and persistence in attempting to justify his actions, demonstrated bad faith and an intention to mislead the bank into producing documents to which Jonathan was not entitled, with a demonstrated intention to harass Christopher (see 22 NYCRR 130-1.1 [c]). 
The court, in its discretion, declines to order costs or sanctions against Mr. Thiagarajan, whose actions "were not demonstrated to be intentional or in bad faith" relative to the subpoena (see Council v Duic, 180 AD2d 583, 584 [1st Dept 1992]). 
Motion to Remove Temporary Guardian and Related Relief
Vivek Thiagarajan, Esq., on behalf of Jonathan, filed a motion seeking the: (1) removal of Christopher as Temporary Guardian; (2) removal of Jane Doe from Cranberry Landing and return to her former residence in Brockport, New York; (3) restoration of Dr. Pankaj Garg as Jane Doe's primary care physician; (4) dismissal of Christopher's Petition for Appointment of a Guardian based on an alleged failure to properly serve Jane Doe; (5) appointment of a third-party, non-family guardian; and (6) an award of fees pursuant to Mental Hygiene Law § 81.35 based upon Christopher's conduct (Motion #6). The Court denied the motion because the allegations lacked a factual basis and did not support the relief sought. 
"While motions in special proceedings are permissible, 'the profusion of motion practice seen in actions has no counterpart in special proceedings for the very reason that the proceeding itself is analogous to a motion and is designed to go to hearing and determination promptly'" (Matter of Nicklin-McKay v Town of Marlborough Planning Bd., 14 AD3d 858, 860 [3d Dept 2005], quoting Siegel New York Practice § 554, at 913 [3d ed]). In the context of this Article 81 proceeding, the Order to Show Cause and Petition filed by Christopher were designated by the Court Clerk as Motion #1 in this proceeding, and the Cross-Petition filed by Jonathan was designated as Motion #2.[FN3]

As set forth below, Jonathan's unsupported arguments "wavered between 'absurdity and frivolity and carry no weight with the court'" (SBE Wall, LLC v New 44 Wall St., LLC, 129 AD3d 542, 542 [1st Dept 2015]). "The legal untenability of [Jonathan's] position should have been apparent" to him and his counsel (see Julian v Security Mut. Ins. Co., 281 AD2d 954 [4th Dept 2001], citing 22 NYCRR 130-1.1 [c] [1], [2] [attorney's fees properly awarded]).
The submissions filed in support of Motion # 6 did not provide a factual basis to grant the requested relief, no submissions were filed between the date of motion argument and the sanctions hearing, and no proof was offered at the hearing to demonstrate any factual basis that supported Jonathan's position in support of the motion.
A. Removal of Christopher as Temporary Guardian
Jonathan twice before requested the removal of Christopher as Jane Doe's Temporary Guardian, first in the Cross-Petition (Motion # 2; see NYSCEF # 29 at page 14)[FN4]
and again in his third application (Motion # 4; see NYSCEF # 57). In his Cross-Petition, Jonathan claimed that Jane Doe did "not require a guardian due to functional limitations, but rather to protect her from the undue influence of Christopher Farley and from being permanently placed in an environment that [was] "more restrictive than what [was] required consistent with her level of functioning" (NYSCEF # 29, page 2). Rather than grant Jonathan's request, the court issued an Order continuing Christopher as Temporary Guardian (NYSCEF # 40). 
The second prior removal request was made four days before trial based on Christopher's alleged failure as Temporary Guardian to comply with reporting and educational requirements and for alleged misconduct in acting under the authority of an invalid power of attorney (NYSCEF #57). The court denied that request in court on July 10, 2023.
Eleven days later, Jonathan made his third request to remove Christopher as Temporary Guardian based on alleged financial mismanagement, neglect of Jane Doe's personal needs, and abuse of power (Motion # 6, NYSCEF # 71). The request was denied in court following motion argument on July 31, 2023.
All of the issues raised in the motion could have been resolved expeditiously, either by direct communication between the parties' counsel or proceeding with the presentation of proof on the prior trial dates. The alleged discrepancy in Jane Doe's assets and income between the Initial Report of Guardian (NYSCEF # 75) and Jane Doe's Application for Residency at the assisted living facility (NYSCEF # 76), for example, was reconciled by Petitioner's counsel. Jonathan's claims that Christopher "unnecessarily enforce[ed] heavy restrictions on Jane Doe's social engagements" were unsupported and flatly refuted. 
The absence of certain names on the "Approved Contacts" list at Cranberry Landing did not prevent visitation by any individuals who were authorized to visit Jane Doe such as her attorney (see NYSCEF # 84), and there was no proof that service of the Petition on Jane Doe pursuant to the Order to Show Cause was thwarted by virtue of the list.[FN5]
Also contrary to Jonathan's arguments, Cranberry Landing's visitor log (NYSCEF # 77) did not demonstrate that Christopher violated his guardianship duties by limiting Jane Doe's social interactions. Further, the lack of access issue previously was addressed in court on March 27th and July 10th. Supervised visitation with Jane Doe would have been allowed for Jonathan, but his counsel did [*7]not provide identifying information about the proposed supervising individual as required by the court (see NYSCEF #40).
Jonathan's final argument for the removal of Christopher as Temporary Guardian because he allowed "the use of Harmful Medications" (Seroquel/Quetiapine) was based on sheer conjecture (NYSCEF # 74, para. 49). Counsel argued that Seroquel was contraindicated for Jane Doe based on general information stated on a government website — without the submission of any supporting medical review of Jane Doe's condition. The court denied counsel's request for an independent medical review because no factual allegations supported Jonathan's claims that the medication was contraindicated or that Christopher violated his guardianship duties in connection with Jane Doe's prescribed medications.
Even if Jonathan's initial request for the removal of Christopher as Temporary Guardian was not frivolous when made, his "continued pursuit" of that relief "became frivolous as the [proceeding] progressed" (see Navin v Mosquera, 30 AD3d 883, 884 [3d Dept 2006] [plaintiffs' conduct was frivolous in continuing to prosecute the action after it was apparent that there was no factual or legal basis to support the complaint]). Jonathan's persistent pursuit of his removal request, based on unsupported allegations and irrelevant exhibits, constituted frivolous conduct which prolonged the resolution of this matter and forced Christopher to incur unnecessary legal expenses.
B. Removal of Jane Doe from Cranberry Landing
No proof was offered to show that Christopher exceeded his powers as Temporary Guardian by placing or maintaining Jane Doe at Cranberry Landing (see NYSCEF # 15 and # 40). As a preliminary matter, Cranberry Landing records filed on behalf of Jonathan show that Jane Doe's "Move in Date" was February 3, 2023, which was 24 days before Christopher was appointed as Temporary Guardian (NYSCEF # 1, # 15, and # 78). 
Jonathan's reliance on Matter of Gambuti (Bowser) (242 AD2d 431 [1st Dept 1997]) in support of his argument that Christopher was not authorized to involuntarily move Jane Doe to Cranberry Landing or maintain her residence there also is misplaced. At issue in Gambuti was the distinction between a special guardian and a plenary guardian, with their distinct reporting requirements. Matter of Gambuti addressed the post-hearing appointment of a special guardian. Here, Christopher was appointed as Jane Doe's temporary guardian by virtue of the Order to Show Cause. Mr. Thiagarajan misinterpreted Matter of Gambuti in the context of this case by conflating the powers and responsibilities of special guardians and temporary guardians.
C. Restoration of Dr. Garg as Jane Doe's Primary Care Physician
Dr. Garg had not seen Jane Doe in five months prior to the motion and no longer was her primary care physician. Only Jane Doe's current condition and the recommendations of her current medical team were relevant to the determination of whether she needed a guardian. Jonathan offered no factual basis to intervene on Jane Doe's behalf and select her providers.
D. Cross-Petitioner's Request for Counsel Fees
Jonathan's request for an award of fees itself qualifies as frivolous conduct in this case (see Marshall v Marshall, 198 AD3d 1288, 1290 [4th Dept 2021]; 22 NYCRR 130-1.1 [c]). The delay of the hearing to resolve the relevant issues in this proceeding was attributable to the actions of Jonathan and his legal team. Mr. Zatkowsky was prepared to proceed on each [*8]scheduled court date. 
All of Jonathan's arguments in support of the motion lacked a factual basis, were completely without merit in law, and could not be supported by a reasonable argument for an extension, modification or reversal of existing law (see 22 NYCRR 130-1.1 [c]). The motion's "primary purpose . . . was to delay" the proceeding and "increase the 'pressure'" on Christopher (see generally Basil B. v Mexico Cent. School Dist., 248 AD2d 985, 985 [4th Dept 1998], lv dismissed in part & denied in part 92 NY2d 834 [1998], lv dismissed 94 NY2d 857 [1999]).
The obviously proper manner for Jonathan to seek all of the relief requested in his motion was to move forward with the guardianship hearing, originally calendared for a date four months before he brought the motion. Instead, he engaged in frivolous motion practice that delayed the proceeding and caused Christopher to incur unnecessary legal fees. Christopher therefore is entitled to an award of costs including reasonable attorney's fees and disbursements payable by Jonathan in connection with Motion # 6 (see generally Matter of Diontae B.P. (Jil P.), 215 AD3d 681 [2d Dept 2023]).
"Generally, the imposition of sanctions involves a more persistent pattern of repetitive or meritless motions" (see Sarkar v Pathak, 67 AD3d 606, 607 [1st Dept 2009]). Although Jonathan's motion "was part of his relentless campaign to prolong this litigation" (see generally Heilbut v Heilbut, 18 AD3d 1, 8 [1st Dept 2005]), its pursuit did not rise to the level of sanctionable conduct (cf. Clissuras v Concord Vil. Owners, 299 AD2d 446 [2d Dept 2002], appeal dismissed 3 NY3d 634 [2004], cert denied 543 US 1021 [2004], rehearing denied 543 US 1178 [2005] [sanction against plaintiff in the form of costs incurred by defendants in defending her repeated motions seeking the same relief]).
CONCLUSION
Actual and reasonable and necessary costs, as well as attorney fees, and financial sanctions in the amount of $10,000.00 are awarded to petitioner Christopher Farley, payable by Aaron Gavenda, Esq., in connection with the motion to quash (Motion #5), based upon his improper use of the subpoena for discovery purposes, improper service of the subpoena, failure to respond to Mr. Zatkowsky's request for withdrawal of the subpoena pursuant to CPLR 2304, failure to respond to Mr. Zatkowsky's requests for a copy of the improperly served subpoena, communicate directly with Mr. Zatkowsky, or halt Chase from taking action on the subpoena when time was of the essence to prevent the release of the records by Chase, as well as for his continued opposition to the motion, which was completely without merit in law and could not be supported by a reasonable argument for an extension, modification or reversal of existing law. 
Costs, attorney fees, and sanctions are awarded to Christopher, payable by cross-petitioner Jonathan Farley, in connection with his motion to remove Christopher as Temporary Guardian and additional relief (Motion # 6), based on his conduct in prolonging the resolution of this special proceeding and harassing Christopher. The motion was his third formal application for removal of Christopher as Temporary Guardian which, like the other relief requested in the motion, was completely without merit in law and could not be supported by a reasonable argument for an extension, modification or reversal of existing law. Sanctions in the amount of $10,000.00 are awarded in connection with frivolous motion practice.
Mr. Zatkowsky is directed to file a fee affirmation with itemized billing statements as proof of the reasonable attorney's fees charged and disbursements made for Motion #5 and Motion #6 by March 15, 2024. Opposing papers must be filed by April 1, 2024. 
Dated: April 11, 2024
HON. CHRISTOPHER S. CIACCIO
Acting Supreme Court Justice

Footnotes

Footnote 1:Mr. Gavenda's carelessness was further demonstrated by his inattention to e-mail messages between the Court and counsel regarding adjournments of the motion to quash argument date, originally scheduled for July 20th. On July 18, 2023, chambers advised all counsel that the motion would be heard on July 31st. Yet on July 19, 2023, Mr. Gavenda — apparently unaware that the return date was adjourned — e-filed an Affirmation stating that he was unable to appear on July 20, 2023, which was not the scheduled return date.

Footnote 2:Mr. Gavenda previously served subpoenas in this matter on individuals located in another state and Canada, explaining to the Court that, to him, "it was the best way to make them aware of the court date and that we wanted their presence there and I understand that it did not carry the same weight as, as a subpoena here in New York State."

Footnote 3:As previously noted, the Court declined to sign the Order to Show Cause associated with Motion # 3, and the Court declined to calendar the motion associated with Motion # 4. Both of those applications were filed on behalf of Jonathan. Christopher's motion to quash was Motion # 5.
Footnote 4:Jonathan proposed the appointment of himself or Lifespan of Great Rochester, Inc. as Guardian.

Footnote 5:Improper service of the Petition was not even alleged by Jane Doe's counsel, and an Affidavit of Service was filed (NYSCEF # 21). Likewise, improper service of the Cross-Petition was not alleged by Jane Doe's counsel.